# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMANDA JONES, <br><br>             Plaintiff, <br><br> v. <br><br> DAN KLEINMAN, <br><br>             Defendant. | Civil Action No. 2:24-CV-10750-BRM-JSA <br><br> **<u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER N.J.S.A. 2A:53A-55</u>** <br><br> **<u>MOTION DATE: NOVEMBER 3, 2025</u>** <br><br> **<u>ORAL ARGUMENT REQUESTED</u>** |

**<u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER N.J.S.A. 2A:53A-55</u>**

RANDAZZA | LEGAL GROUP

## TABLE OF CONTENTS

1.0     INTRODUCTION ...................................................................................1

2.0     FACTUAL BACKGROUND ...................................................................4

2.1     Amanda Jones, Public Figure ..........................................................4

2.2     The Specific Statements Alleged.....................................................7

2.3     The Controversy Around Student Access to Sexual Materials .................10

3.0     LEGAL STANDARD.............................................................................12

4.0     ARGUMENT ........................................................................................14

4.1     Prong One .......................................................................................14

4.2     Prong Two .......................................................................................16

4.3     Plaintiff Failed to State a Claim .....................................................16

4.3.1   The Defamation Claim Fails .....................................................17

4.3.1.1   The Statements are Expressions of Opinion  or Rhetorical Hyperbole............................................................................17

4.3.1.2   The Actual Malice Standard Applies ...............................26

4.3.1.3   Jones Has Not Alleged Actual Malice ............................27

4.3.2   The False Light Claim Fails.....................................................30

5.0     CONCLUSION .....................................................................................31

# TABLE OF AUTHORITIES

## CASES

*Ambach v. Norwick*,
  441 U.S. 68 (1979)................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................13

*Bain v. Wrend*,
  No. 5:14-cv-00202, 2016 U.S. Dist. LEXIS 98469 (D. Vt. July 28, 2016)........22

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015)....................................................30

*Bobulinski v. Tarlov*,
  758 F. Supp. 3d 166 (S.D.N.Y. 2024) ............................................4

*Broughty v. Bouzy*,
  No. 22-6458 (SDW) (JRA), 2023 U.S. Dist. LEXIS 136681
  (D.N.J. Aug. 7, 2023)...........................................................24

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006).....................................................4

*Condit v. Dunne*,
  317 F. Supp. 2d 344 (S.D.N.Y. 2004) ............................................4

*Curtis Pub. Co. v. Butts*,
  388 U.S. 130 (1967).............................................................26

*Dairy Stores, Inc. v. Sentinel Publishing Co.*,
  104 N.J. 125, 516 A.2d 220 (1986)..............................................23

*DeAngelis v. Hill*,
  180 N.J. 1 (2004) ..............................................................17

*Durando v. Nutley Sun*,
  209 N.J. 235 (2012) ............................................................30

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

RANDAZZA | LEGAL GROUP

*Feitosa v. Keem*,
  No. 22-cv-3775, 2023 U.S. Dist. LEXIS 33291
  (W.D.N.Y. Feb. 28, 2023) .............................................................21, 22

*Ganske v. Mensch*,
  480 F. Supp. 3d 542 (S.D.N.Y. 2020) ...........................................23

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974).........................................................................26

*Grama v. UMG Recordings, Inc.*,
  No. 1:25-cv-00399-JAV (S.D.N.Y. Oct. 9, 2025) .............................25

*Hayashi v. Ozawa*,
  No. 17-CV-2558 (AJN), 2019 U.S. Dist. LEXIS 53130
  (S.D.N.Y. Mar. 28, 2019) ................................................................18

*In re Integra Lifesciences Holdings Corp. Sec. Litig.*,
  No. 23-20321 (MAS) (TJB), 2025 U.S. Dist. LEXIS
  124268 (D.N.J. June 30, 2025) .........................................................5

*In re Plum Baby Food Litig.*,
  637 F. Supp. 3d 210 (D.N.J. 2022) ...................................................4

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)...............................................................4

*Jacobus v. Trump*,
  51 N.Y.S.3d 330 (N.Y. Sup. Ct 2017) .............................................24

*Jones v. Citizens for A New La.*,
  2023 CA 0654 R, 2025 La. App. LEXIS
  1901 (La. App. 1 Cir Oct. 7, 2025)...............................................5, 12

*Jones v. Citizens for a New Louisiana*,
  No. 175021, 21st Jud. Dist. for the Parish of Livingston, Louisiana....................6

*Jones v. N. Child.'s Servs.*,
  No. 23-4349, 2024 U.S. Dist. LEXIS
  148386 (E.D. Pa. Aug. 20, 2024)......................................................18

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

*Law Offices of David Freydin, P.C. v. Chamara,*
  24 F.4th 1122 (7th Cir. 2022) ...............................................................18

*Lawrence v. Bauer Pub. Co.,*
  89 N.J. 451 (1982) ................................................................................26

*Live Face on Web, LLC v. Five Boro Mold Specialist Inc.,*
  No. 15 CV 4779-LTS-SN, 2016 U.S. Dist. LEXIS 56601
  (S.D.N.Y. Apr. 28, 2016) ......................................................................23

*Lynch v. N.J. Educ. Assoc.,*
  161 N.J. 152 (1999) ........................................................................17, 23

*MacKey v. Krause,*
  2025 UT 37 (Ut. Sup. Ct. 2025) ...........................................................15

*Mahmoud v. Taylor,*
  145 S. Ct. 2332 (2025) ..........................................................................20

*McCafferty v. Newsweek Media Grp., Ltd.,*
  955 F.3d 352 (3d Cir. 2020) ..................................................................27

*McDowell v. Paiewonsky,*
  769 F.2d 942 (3d Cir. 1985) ..................................................................27

*Meyer v. Nebraska,*
  262 U.S. 390 (1923) ..............................................................................14

*Murphy v. Rosen,*
  2025 Conn. LEXIS 8 (January 21, 2025) ..............................................23

*New York Times v. Sullivan,*
  376 U.S. 254 (1964) .........................................................................26, 27

*Pace v. Baker-White,*
  850 Fed. Appx. 827 (3d Cir. 2021) ........................................................28

*Pitts v. Newark Bd. of Educ.,*
  337 N.J. Super. 331 (Super. Ct. App. Div. 2001) .................................14

*Romaine v. Kallinger,*
  109 N.J. 282 (1988) ..............................................................................31

*Scholar Intelligent Solutions, Inc. v. N.J. Eye Ctr., P.A.*,
 2013 U.S. Dist. LEXIS 78888 (N.J. June 5, 2013) ............................................. 12

*Senna v. Florimont*,
 196 N.J. 469 (2008) ........................................................................................ 26

*Spar v. Celsion Corp.*,
 No. 20-15228 (ZNQ) (DEA), 2023 U.S. Dist. LEXIS 19553
 (D.N.J. Feb. 6, 2023)......................................................................................... 4

*St. Amant v. Thompson*,
 390 U.S. 727 (1968)......................................................................................... 27

*Steinhilber v. Alphone*,
 68 N.Y.2d 283 (1986) ...................................................................................... 24

*Tannous v. Cabrini Univ.*,
 697 F. Supp. 3d 350 (E.D. Pa. 2024) ................................................................ 18

*Torain v. Liu*,
 279 F. App'x 46 (2d Cir. 2008) ........................................................................ 25

*Turbe v. Gov't of the V.I.*,
 938 F.2d 427 (3d Cir. 1991).............................................................................. 12

*Ward v. Zelikovsky*,
 136 N.J. 516 (1994) ......................................................................... 18, 22, 23

*Wash. v. Glucksberg*,
 521 U.S. 702 (1997)......................................................................................... 14

*World Mission Soc'y, Church of God v. Colon*,
 2015 N.J. Super. LEXIS 37 (N.J. Super. Feb. 9, 2015) ...................................... 31

**STATUTES**

N.J.S.A. 2A:53A-49 .......................................................................................... 2

N.J.S.A. 2A:53A-50 ..................................................................... 2, 13, 14, 16

N.J.S.A. 2A:53A-55 ................................................................. 13, 14, 16, 31

N.J.S.A. 2A:53A-58 .......................................................................................... 31

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

Restatement (Second) of Torts § 652 .......................................................30

 **RULES**

Fed. R. Civ. P. 12 ......................................................................12, 14, 16

Fed. R. Evid. 201 ...................................................................................4

**CONSTITUTIONAL PROVISIONS**

N.J. Const., Art. I ..................................................................................3

U.S. Const. amend. I ........................................................................3, 20

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

## 1.0    INTRODUCTION

There is a national debate raging not as to whether certain books should be published, sold, or distributed – simply whether they should be put in the hands of children by people other than their parents.  One example is "*Gender Queer*." An excerpt from it is below:



Defendant Dan Kleinman believes that this is inappropriate to give to children.  Plaintiff Amanda Jones thinks that this is okay to give to children.[1]  It does

---

[1] Jones specifically has stated "I see the book *Gender Queer* targeted a lot and, um, that book saves lives, you know."  Defense of Democracy Podcast (Jan. 23, 2024), available at https://player.fm/series/defense-of-democracy-podcast/defending-the-right-to-read-a-librarians-battle-against-censorship, at 31:59.  In that same podcast, at 33:31, Jones stated "And, and, and my thing is we, why should *Pride Puppy!* or *Gender Queer* be [segregated] in an LGBTQ section. Libraries are for everyone. They don't serve a certain population, they serve everyone, you know?"

not matter whether it is appropriate for children or not.  What matters is that we are entitled to disagree, and that disagreement might get heated.  For advocating against this being in a minors' section in the library, Kleinman has been called a "Fascist," a "Nazi," and other epithets.  He has been accused of advocating for censorship, and of being hateful and Anti-LGBTQ.  He has stood largely alone, without outside funding or organizational support.  But he has stood up for his beliefs.  And he has suffered the barbs and sharp elbows that get thrown in the public arena with dignity.

The Plaintiff, on the other hand, has massive organizational support for her view that books like this belong in the hands of children.  And neither she nor her benefactor organizations like the fact that someone disagrees with them.  Kleinman is a vocal advocate for his position, and they seek to silence him in this SLAPP suit.

New Jersey's Anti-SLAPP law, the Uniform Public Expression Protection Act, ("UPEPA"), N.J.S.A. 2A:53A-49 *et seq*., which took effect in 2023, applies to claims asserted in a civil action based upon, in relevant part, the defendant's "exercise of the right of freedom of speech or of the press … guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern." N.J.S.A. 2A:53A-50(b)(3). Plaintiff's claim is a classic SLAPP in violation of the UPEPA.

Plaintiff Amanda Jones calls herself an "anti-censorship" advocate, but that "anti-censorship" credo is conditional. She has achieved national prominence, partly

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

based upon a book that she published promoting her alleged opposition to censorship, entitled *That Librarian: The Fight Against Book Banning in America* ("*That Librarian*"). Her methods and public statements have, predictably, drawn criticism, but despite her purported opposition to censorship, Jones cannot tolerate criticism and has filed multiple defamation lawsuits trying to silence her critics. "That Librarian" is quite censorship-minded when it comes to shutting up anyone who disagrees with her agenda.

Her current target is Defendant Dan Kleinman, the founder of SafeLibraries, a watchdog group dedicated to ensuring that activist librarians do not harm children by promoting sexually explicit materials to children.[2] Kleinman criticizes Jones and her advocacy, expressing the opinion that her methods are harmful to minors.

Jones may not like Kleinman's criticism, but it is protected by the First Amendment to the United States Constitution and Article I of the New Jersey Constitution. Pursuant to the UPEPA, all of her claims against Kleinman should be dismissed with prejudice, and he is entitled to an award of his attorneys' fees and costs spent defending himself against Jones's frivolous claims.

---

[2] Kleinman has no objection to such materials existing, being bought, sold, read, nor even provided to children – as long as their parents have informed consent. His objections only apply to adults who feel it is appropriate to provide pornographic materials to children.

RANDAZZA | LEGAL GROUP

## 2.0    FACTUAL BACKGROUND

### 2.1    Amanda Jones, Public Figure

Kleinman reports on librarians via X, through the handle @SexHarassed, and on his blog, SafeLibraries. ECF No. 1 at ¶ 1. Jones tries to avoid the actual malice standard by falsely alleging that she is merely "an elementary school librarian in Louisiana." *Id*. at ¶ 2. This is a serious underselling of her national reputation and national notoriety. According to Jones's own website,[3] she gained national fame in July 2022, when she "spoke publicly at the Livingston Parish Public Library board

---

[3] This website, as well as the other exhibits to this Motion not mentioned in the Complaint, may be considered in deciding this Motion. This is because Fed. R. Evid. 201(b) allows a court to take judicial notice of any adjudicative fact that is generally known within the court's territorial jurisdiction or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be disputed. "A court must take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(c)(2). A court may consider matters subject to judicial notice when deciding a motion to dismiss. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 219 (D.N.J. 2022); *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 260 n.31 (3d Cir. 2009) (stating a court should not consider "evidence outside the amended complaint unless (1) the document is incorporated by reference, or (2) the adjudicative fact at issue is subject to judicial notice"). Courts may take judicial notice of the existence of media articles in deciding a motion to dismiss. *Spar v. Celsion Corp.*, No. 20-15228 (ZNQ) (DEA), 2023 U.S. Dist. LEXIS 19553, *13-14 (D.N.J. Feb. 6, 2023); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, on a motion to dismiss, courts may consider "items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case"). Courts will therefore often "take[] judicial notice" of documents that "provide[] necessary context" for a "defamation claim." *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 173 n.2 (S.D.N.Y. 2024); *Condit v. Dunne*, 317 F. Supp. 2d 344, 356-57 (S.D.N.Y. 2004) (taking judicial notice of submissions that place defendant's comments "in the broader social context" to "aid

---

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

of Control Meeting as a resident of my community." "Speaking Out" page of Plaintiff's website, attached as **Exhibit 1**.[4] She is "the founder and Executive Director of the Livingston Parish Library Alliance and proud co-founder of Louisiana Citizens Against Censorship." *Id*. Her website provides links to *76 media articles* interviewing her dating back to 2022. *Id*.[5] She has already been found to be a public figure on account of her public statements. *See Jones v. Citizens for A New La*., 2023-0654 (La. App. 1 Cir 10/07/25) (lower court order making such finding reversed on other grounds).

What propelled her into a subject of media attention, however, was a lawsuit she filed against her critics based on statements similar to those at issue here, namely, accusations that Jones was "grooming" students by exposing them to sexual materials inappropriate for their ages. *See Jones v. Citizens for a New Louisiana*, No.

---

the Court['s]" determination fo the adequacy of plaintiff's defamation claims). The exhibits to this Motion consist of media articles used only to show their existence and contents, rather than the truth of their reporting, Plaintiff's own website whose accuracy cannot reasonably be disputed (as Plaintiff herself created it), and representations made by Plaintiff in other litigation that is a matter of public record. Accordingly, the Court may consider such exhibits, and there is no need for a separate motion or request for judicial notice is necessary. *See In re Integra Lifesciences Holdings Corp. Sec. Litig.*, No. 23-20321 (MAS) (TJB), 2025 U.S. Dist. LEXIS 124268, *38 (D.N.J. June 30, 2025).

[4] Available at: https://sites.google.com/view/abmack33/speaking-out?authuser=0 (last accessed Oct. 7, 2025).

[5] So as to avoid an unnecessarily voluminous record, these articles are not attached to this Motion. Kleinman would be happy to supplement this Motion with copies of these articles if the Court would find them helpful, however.

175021, 21st Jud. Dist. for the Parish of Livingston, Louisiana (the "CNL Case"). The majority of news articles cited on Jones's website, including the earliest of them, reported on the CNL Case. *See, e.g.*, Tyler Kingkade, "In rare move, school librarian fights back in court against conservative activists," NBC NEWS (Aug. 13, 2022).[6]

The defendants in the CNL Case won an Anti-SLAPP motion under Louisiana's statute. *See* documents posted on Jones's website regarding the CNL Case, attached as **Exhibit 3**.[7] In the appeal, she noted that she "has received numerous local, state, and national recognitions, including 'Dream Teacher' and 'Librarian of the Year.'" *Id*. at Opening Brief, p. 5. These documents, as well as the "Speaking Out" page of her website, set out the statements Jones made during her attention-getting library meeting in July 2022, including, in relevant part, the following statements:

> While book challenges are often done with the best intentions, and in the name of age appropriateness, they often target marginalized communities such as our black indigenous people of color and our LGBT community. **They also target books on sexual health and reproduction** . . . **I find it ironic that any member of the community would want to limit access to books on reproduction or relocate it away from our children who need it the most?**
> . . .

---

[6] Available at: https://www.nbcnews.com/news/us-news/rare-move-school-librarian-fights-back-court-conservative-activists-rcna42800 (last accessed Oct. 7, 2025), Attached hereto as **Exhibit 2**.

[7] Available at: https://drive.google.com/file/d/1-mEI4baXZsvPdpbslQ_1FbP8uGoPDLIz/view (last accessed Oct. 7, 2025).

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

> [Libraries] collect and make available a wide variety of information resources representing the range of human thought and experience. With such a broad spectrum of ideas and information available, **it is inevitable that people will occasionally encounter resources they believe to be inappropriate for their family**.
>
> . . .
>
> **If we remove or relocate books with LGBTQ themes or sexual health content, what message is that sending to our community?** . . . Parents have a personal responsibility to monitor their own child's reading, and no one else's.

*Id*. at Opening Brief, pp. 7-9; **Exhibit 1** (emphasis added). Jones has thus, in her own words, publicly advocated that minors should have access to books with "LGBTQ themes" and "sexual health content," and this advocacy has received significant media coverage starting in 2022. Jones's profile has risen so much that she was recently named as one of "The World's Most Influential Rising Stars" by TIME Magazine for 2025, attached as **Exhibit 4**.[8] Jones was placed alongside celebrities such as David Corenswet, who played the character of Superman in 2025's blockbuster film of the same name. *Id*.

### 2.2    The Specific Statements Alleged

Kleinman has posted statements online about Jones on X and has made statements on talk radio about her, directed both to the general public and to elected officials. ECF No. 1 at ¶ 3, 13-14.  His advocacy is fully protected speech.  What Jones sues over is somewhat confusing, as she does not seem to be very specific nor

---

[8]  Available at:  https://time.com/collections/time100-next-2025/7318848/amanda-jones/ (last accessed Oct. 8, 2025).

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

discerning with respect to the statements. But no matter how you slice them, they are not legally actionable.

Jones complains of Kleinman's social media statements from February to November 2024, which she claims "are too numerous to reproduce here." ECF No. 1 at ¶¶ 20-72.[9] She does not, however, allege in this recitation that any particular statement is false or why such statements are false. Rather, she alleges the following:

- "Kleinman falsely states that Jones gives highly age-inappropriate sexual material, including books that depict anal sex and books with titles such as 'Spanking for Lovers,' 'The Ultimate Guide to Kink,' and 'The Ultimate Guide to Threesomes,' to children." ECF No. 1 at ¶ 75.

- Kleinman "falsely states that [Jones] 'preys on kids.'" *Id*. at ¶ 76.

- Kleinman "falsely states that [Jones] 'sexualizes' children." *Id*. at ¶ 77.

- Kleinman "labels [Jones] a 'child groomer.'" *Id*. at ¶ 78.

Jones alleges nothing more than a basic denial that she provides age-inappropriate material, that she preys on or sexualizes children, or that she is a child groomer. *Id*. at ¶¶ 86-88. Looking at no more than a characterization of a few statements among dozens of social media posts and a non-specific denial of such

---

[9] Paragraph 21 of the Complaint is a recitation of statements unidentified third parties made in response to Kleinman's statements, rather than statements Kleinman himself published. They are thus not part of the analysis in this Motion.

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

characterizations does not make for much of a defamation analysis. It is thus important to look at the specific statements identified in the Complaint, in context.

The first problem for Jones is that several of the posts identified in the Complaint do not contain any of the statements alleged in paragraphs 75-78, and there is no allegation that Kleinman defamed Jones by implication. Accordingly, Jones fails to allege there is anything false about the posts identified in paragraphs 23, 27, 41, 42, 53, 63, and 66.

Regarding the allegation in paragraph 75, there is only a single X post referring to this:



ECF No. 1 at ¶ 72. Another problem with Plaintiff's allegation is that she misrepresents what Kleinman actually wrote. He did not claim that Jones *gave*

students any of the identified books. Rather, he said that librarians like Jones "already cover these topics," an allegation that Jones does not deny.

As for the remaining statements, they boil down to variations of Kleinman claiming that Jones is a "groomer," that she "grooms kids," that she "preys on kids," and that she is "sexualizing kids." None of Kleinman's statements actually claim that Jones is engaging in sexual intercourse with children or is "grooming" or "sexualizing" anyone in particular. Rather, many of his statements opine that Jones's advocacy for minors' access to books with LGBTQ and sexual content, including her admission during the July 2022 school board meeting, posted on her website, publicly advocating for giving children access to books with explicit sexual information, as well as public statements supporting access to books such as Gender Queer, constitutes "grooming." ECF No. 1 at ¶¶ 34, 39, 43-45, 48, 50, 62, & 67. This word seems to offend Ms. Jones greatly, but that does not make it actionable.

### 2.3    The Controversy Around Student Access to Sexual Materials

As is evident from the prior lawsuit Jones herself filed, Kleinman is far from the only person to characterize advocacy for handing out sex books to kids as "grooming" or "sexualization." Even before Kleinman published any of the statements above, the Internet was rife with reporting on this very topic. *See* Hannah Natanson and Moriah Balingit, "Teachers who mention sexuality are 'grooming' kids, conservatives say," THE WASHINGTON POST (Apr. 5, 2022), attached as **Exhibit**

**5**[10] (reporting on statements by Florida Governor Ron DeSantis's office that "anyone who opposes a bill forbidding teachers from talking about gender identity or sexual orientation with students in early grades is 'probably a groomer or at least you don't denounce the grooming of 4-8 year old children'"); Kiara Alfonseca, "Teachers, librarians targeted by angry parents over LGBTQ books speak out," ABC NEWS (May 19, 2023), attached as **Exhibit 6**[11] (recounting incident where parents of students filed police report against teacher who gathered numerous books requested by the students, "claiming Bonner was 'grooming' students with the book" because of "the book's reference to sexual activities"); Madeleine Carlisle, "Public Libraries Face Threats to Funding and Collections as Book Bans Surge," TIME (Sept. 7, 2022), attached as **Exhibit 7**[12] (reporting on accusations of "grooming" children through sexually explicit books).

While there is room for debate over whether these teachers' and librarians' conduct are "grooming" or "sexualizing" minors, the very court in Jones's CNL Case found that **accusing her of such conduct was an expression of protected opinion in light of her advocacy for children having access to materials with sex**

---

[10]  Available at: https://www.washingtonpost.com/education/2022/04/05/teachers-groomers-pedophiles-dont-say-gay/ (last accessed Oct. 7, 2025).

[11] Available at: https://abcnews.go.com/US/teachers-librarians-targeted-angry-parents-lgbtq-books-speak/story?id=99390577 (last accessed Oct. 7, 2025).

[12] Available at: https://time.com/6211350/public-libraries-book-bans/ (last accessed Oct. 7, 2025).

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

**themes and sexual information**. **Exhibit 3** at Sept. 21, 2022, transcript, pp. 311-313.[13] Jones knowingly thrust herself into a position of public prominence on a white-hot issue of nationwide cultural significance. When half the country thinks that giving children access to books discussing sex constitutes *grooming*, a citizen joining in the chorus of calling such actions "grooming" cannot be a false statement of fact. It is Kleinman's opinion, shared by millions, and it is fully protected under the First Amendment and the New Jersey constitution.

## 3.0    LEGAL STANDARD

Federal courts typically treat Anti-SLAPP motions as either a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or a motion for summary judgment under Rule 56, depending on whether the motion makes a factual challenge to the complaint. "The Third Circuit has held that a motion brought under Rule 12(c) is governed by the same standard of review applicable to Rule 12(b)(6) motions." *Scholar Intelligent Solutions, Inc. v. N.J. Eye Ctr., P.A.*, 2013 U.S. Dist. LEXIS 78888, *4 (N.J. June 5, 2013) (citing *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). Kleinman makes a legal challenge to the Complaint and thus moves under the standard for a motion to dismiss under Rule 12(c). Therefore,

---

[13] The appeals court in the CNL case recently determined that those defendants' other statements could give rise to liability, but Mr. Kleinman is not accused here of making those statements. *Jones v. Citizens for A New La.*, 2023 CA 0654 R, 2025 La. App. LEXIS 1901, *22 (La. App. 1 Cir Oct. 7, 2025).

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

under the 12(b)(6) standard of review, to survive a motion for judgment on the pleadings, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The standard for plausibility is met if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but "naked assertions" or "conclusory statements" are not enough. *Id*.

Evaluating a motion under New Jersey's UPEPA is a three-step process. First, the defendant must show that the claims asserted against him are based upon his exercise of his right to freedom of speech or freedom of the press under the U.S. or New Jersey constitution on an issue of public concern. *See* N.J.S.A. 2A:53A-50(2)(b)(3), 55(a)(1). This prong is rather easy here.

The Second prong is rarely invoked or relevant. This only applies to derail the motion if the Plaintiff is suing the government, or the government is suing to prevent imminent threats to health or safety, or if the defendant is a seller or leaser of goods. N.J.S.A. 2A:53A-50(c).

The third prong is where the meat is. Once he satisfies his burdens under the first two prongs, the defendant must show that the plaintiff has failed to state a cause of action upon which relief can be granted or that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See* N.J.S.A. 2A:53A-

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

55(a)(3)(b). Alternatively, the plaintiff must show that she has a prima facie case as to each essential element of her causes of action. *See* N.J.S.A. 2A:53A-55(a)(3)(a). In federal court, however, the third step of this analysis is replaced with, in this case, the analysis for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

## 4.0    ARGUMENT

### 4.1    Prong One

The first prong of the UPEPA analysis is whether "the moving party established under subsection b of section 2 that this act applies." N.J.S.A. 2A:53A-55(7)(a)(1). Under subsection b of section 2, the UPEPA applies "to a cause of action asserted in a civil action against a person based on the person's . . . exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the right of association, guaranteed by the United State Constitution or the New Jersey Constitution, on a matter of public concern." N.J.S.A. 2A:53A-50(2)(b)(3).

Kleinman was exercising his right of freedom of speech when he posted his opinions on X regarding this established national debate over childrens' access to sexually explicit material. Education policy has been repeatedly affirmed by the Courts to be a matter of public concern. *Wash. v. Glucksberg*, 521 U.S. 702 (1997); *Meyer v. Nebraska*, 262 U.S. 390 (1923). New Jersey courts have found that "the safety and well-being of [] school children" is a matter of public concern. *Pitts v. Newark Bd. of Educ.*, 337 N.J. Super. 331, 338 (Super. Ct. App. Div. 2001). Given

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

"the importance of public schools in the preparation of individuals for participation as citizens and in the preservation of the values on which our society rests," it should be no question that the content available to children in public schools is a matter of public concern. *Ambach v. Norwick*, 441 U.S. 68, 85-86 (1979). In the Anti-SLAPP context, courts dealing with accusations of inappropriate conduct towards students have found that such accusations are related to matters of public concern. *See MacKey v. Krause*, 2025 UT 37, ¶¶ 51-52 (Ut. Sup. Ct. 2025) (finding allegations of student abuse were protected under Utah's version of UPEPA, and noting "[i]t is not a leap of logic to conclude that the community at large would share a concern about a public-school teacher assaulting a student and the potential danger such a teacher might pose to the student body at large"). And as discussed in Section 2.3, *supra*, the ongoing debate about the propriety of allowing students to access sexual materials in schools and libraries has received tremendous media and political attention throughout the country.

Jones filed suit against Kleinman based on his exercise of his right to freedom of speech regarding a matter of public concern. She admits her censorious motive in filing this suit; the Complaint mentions that she "hopes that this lawsuit might cause Kleinman to stop falsely maligning librarians everywhere" (ECF No. 1 at ¶ 7) or, in other words, to stop speaking up on what he considers to be the troubling sexualization of minors. Kleinman has satisfied the first prong.

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

### 4.2    Prong Two

The second prong is whether "the responding party fails to establish under subsection c of section 2 . . . that this act does not apply". N.J.S.A. 2A:53A-55(7)(a)(2).  The UPEPA does not apply "to a cause of action asserted: (1) against a governmental unit or an employee or agent of a governmental unit acting or purporting to act in an official capacity; (2) by a governmental unit or an employee or agent of a governmental unit acting in an official capacity to enforce a law to protect against an imminent threat to public health or safety; or (3) against a person primarily engaged in the business of selling or leasing goods or services if the cause of action arises out of a communication related to the person's sale or lease of the goods or services."  N.J.S.A. 2A:53A-50(2)(c).

The parties are not governmental entities and the claims asserted in the Complaint are not against a governmental unit or by a governmental unit or employee acting in an official capacity. Kleinman is not primarily engaged in the business of selling or leasing goods, and the claims are not related to communications concerning the selling or leasing of goods. Plaintiff is incapable of proving that the UPEPA should not apply.

### 4.3    Plaintiff Failed to State a Claim

The third prong of the UPEPA analysis in this case is replaced with the analysis for a motion under Fed. R. Civ. P. 12(c), which itself is the same as the

analysis for a motion to dismiss under Rule 12(b)(6). Jones has failed to sufficiently plead a cause of action for either defamation or false light.

### 4.3.1  The Defamation Claim Fails

At this stage, Jones must sufficiently allege: (1) that Kleinman made a defamatory statement of fact; (2) about her; (3) that was false; (4) which was communicated to at least one third party; and (5) that Kleinman knew the statement was false or acted in reckless disregard of whether it was true or false. *See DeAngelis v. Hill*, 180 N.J. 1, 12-13 (2004). The second and fourth elements of Jones's defamation claim are not at issue.  Kleinman does not dispute that he published the complained-of statements of and concerning Jones to third parties.

#### 4.3.1.1    The Statements are Expressions of Opinion or Rhetorical Hyperbole

In New Jersey, "whether a statement is defamatory depends on its content, verifiability, and context." *Lynch v. N.J. Educ. Assoc.*, 161 N.J. 152, 167 (1999). "Evaluation of content involves consideration not merely of a statement's literal meaning, but also of the fair and natural meaning that reasonable people of ordinary intelligence would give it." *Id*.  As such, "insults, epithets, name-calling, and other forms of verbal abuse, although offensive, are not defamatory." *Id*.  A disparaging term by itself is not actionable.  As an example, the New Jersey Supreme Court stated that while "the term 'bitch' is undoubtedly disparaging . . . to hold that calling someone a 'bitch' is actionable would require us to imbue the term with a meaning

it does not have." *Ward v. Zelikovsky*, 136 N.J. 516, 537 (1994). While a manner of expression may be derogatory, an offensive term "has no ascertainable content, is not verifiable and the context does not imbue the term with a fact intensive meaning." *Id*. "'Among the terms or epithets that have been held . . . to be incapable of defaming because they are mere hyperbole rather than falsifiable assertions of discreditable fact are 'scab,' 'traitor,' 'amoral,' 'scam,' 'fake,' 'phony', 'a snake-oil job,' 'he's dealing with half a deck,' and 'lazy, stupid, crap-shooting, chicken-stealing idiot.'" *Jones v. N. Child.'s Servs.,* No. 23-4349, 2024 U.S. Dist. LEXIS 148386, *10 (E.D. Pa. Aug. 20, 2024) (quoting *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996); *see also Tannous v. Cabrini Univ.*, 697 F. Supp. 3d 350, 364 (E.D. Pa. 2024) ("[m]oreover, the use of epithets, insults, name-calling, profanity and hyperbole may be hurtful to the listener and are discouraged, but such comments are not actionable").

Offensive characterizations alone are non-actionable because "comments of this nature [are] actionable when based on identifiable conduct but [are] non-actionable when stated in general terms, without asserting specific factual support." *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1131 (7th Cir. 2022). "[E]ven accusations of criminal behavior are not actionable if, understood in context, they are opinion rather than fact." *Hayashi v. Ozawa*, No. 17-CV-2558 (AJN), 2019 U.S. Dist. LEXIS 53130, *6 (S.D.N.Y. Mar. 28, 2019). Kleinman did not accuse

Jones of any specific instances of conduct that would fit accusations of an actual crime or sexual activity.  He has simply called her the pejorative term "groomer."  Because there is no set legal or literal definition of "grooming," the fair and natural meaning recognized by a reasonable reader is necessary to analyze the statement.

As shown in Section 2.3, *supra*, a large portion of the American public considers the exposure of young children to books with sexual content to be highly inappropriate.  One of the books at the center of this controversy is the book "Gender Queer: A Memoir" (2019), by Maia Kobabe.  One way of looking at this book is that it is a comic book that helps children understand their sexuality.  Another way of looking at it is that it is a book that desensitizes children to sexually explicit materials and opens them up to future sexual experiences.  Jones publicly advocated for this specific book to be available to minors during an interview with the "Defense of Democracy" podcast, stating that Gender Queer "saves lives."[14]  *See* Declaration of Alex J.



Shepard ("Shepard Dec."), attached as **Exhibit 8**, at ¶ 10 (providing partial transcript of interview). This interview predates any of Kleinman's complained-of statements.

Reasonable people may have differing opinions. Justice Gorsuch thought that *Pride Puppy!*, another book Jones promoted (Shepard Dec. at ¶ 10) contained images of bondage, leather, and sex workers. Oral argument Transcript in *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025) (**Exhibit 9**),[15] at 151-152. And in a published Supreme Court opinion Justice Thomas characterized it as being "intended for teachers to read to 3- and 4-year-olds" and "invites readers to search for items depicted in the book's illustrations, including 'underwear,' a '[drag] king,' and a '[drag] queen[.]'" *Mahmoud v. Taylor*, at 2376.

Kleinman agrees that there is a First Amendment right to publish these books, to possess them, to sell them, and to distribute them, but there is also a First Amendment right to believe and say that making books like these available to a minor and advocating for it is a bit messed up – and amounts to *grooming* or sexualizing children. Kleinman is merely one among millions to hold such an opinion. Jones may think that word gives her an opportunity to punish Kleinman, but that does not make Kleinman's statements actionable.

---

of-democracy-podcast/defending-the-right-to-read-a-librarians-battle-against-censorship (last accessed Oct. 8, 2025).

[15] Available at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/24-297_p8k0.pdf (last accessed Oct. 9, 2025).

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

In her Complaint, Jones cites *Feitosa v. Keem*, No. 22-cv-3775, 2023 U.S. Dist. LEXIS 33291, *3 n.2 (W.D.N.Y. Feb. 28, 2023), for the proposition that the term "grooming" is "understood to be 'a tactic where someone methodically builds a trusting relationship with a child or young adult, their family, and community to manipulate, coerce, or force the child or young adult to engage in sexual activities."



But that court was merely quoting from a sheet published by the Connecticut Children's Alliance, rather than engaging in an analysis of what the term actually means to a reasonable person. But taking that fact sheet at face value, Jones exhibits one of the red flags for child grooming: "[e]xposing the child or young adult to sexual and/or age-inappropriate conversations, media, and behaviors." CT Children's Alliance Fact Sheet cited in *Feitosa v. Keem*, attached as **Exhibit 10**.[16] Is giving children a comic book that discusses a "strap on harness" or that contains dialogue such as "I can't wait to have your cock in my mouth" properly described as "sexual" or "age inappropriate?"  It

---

[16]  Available at: https://portal.ct.gov/-/media/DCF/GTF-CJA/HB-6113/Grooming_Connecticut-Safe-Sport-Policy-Child-Abuse-Prevention_Digital.pdf (last accessed Oct. 7, 2025).

RANDAZZA | LEGAL GROUP

would take quite a radical mind to say "no."  And if the CT Children's Alliance definition is followed, then it is quite fair to espouse the opinion that putting this kind of thing in a child's hands is "grooming" behavior.

*Keem* is of further dubious value.  The defendant in *Keem* did not argue that the accusation of having "allegedly groomed girls from ages 12-15" was an expression of opinion, but rather a joke that no one would take seriously. 2023 U.S. Dist. LEXIS 33291 at *15-16. Further, there is a big difference between a specific allegation like the defendant made there and the statements here.

Jones cites another case for a similar definition of "grooming," *Bain v. Wrend*, No. 5:14-cv-00202, 2016 U.S. Dist. LEXIS 98469, *6 n.2 (D. Vt. July 28, 2016), but that case dealt with a wrongful termination claim and the court did not conduct an analysis of whether the term "groomer" could be defamatory.

Turning to verifiability, New Jersey courts have recognized the importance of necessitating the provable nature of statements to uphold First Amendment freedoms and protections to share thoughts.  "Unless a statement explicitly or impliedly rests on false facts that damage the reputation of another, the alleged defamatory statement will not be actionable." *Ward* at 531.   While Kleinman may have used insulting language, his heated language does not make his statements defamatory, as "courts differentiate between defamatory statements and statements of rhetorical hyperbole." *Id.* at 530.  In addition, opinion statements "are generally not capable

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

of proof of truth or falsity because they reflect a person's state of mind." *Id.* at 530. Further, if the meaning of a term is inherently subjective, the term is "not objectively verifiable and [does] not, without more, imply the existence of undisclosed defamatory facts." *Murphy v. Rosen*, 2025 Conn. LEXIS 8, *4 (January 21, 2025).

A "pure opinion" is "one that is based on stated facts or facts that are known to the parties or assumed by them to exist." *Dairy Stores, Inc. v. Sentinel Publishing Co.,* 104 N.J. 125, 147, 516 A.2d 220, 231 (1986). As shown in the various posts cited in the Complaint, Kleinman's opinions are based on Jones's own statements in her various media engagements such as public speeches and appearances on podcasts. He does not imply any undisclosed facts, making his statements pure opinions. Even if there is a question as to the nature of Kleinman's statements, the Court should dismiss this claim: "if a statement could be construed as either fact *or* opinion, a defendant should not be held liable." *Lynch v. N.J. Educ. Assoc.*, 161 N.J. 152, 168 (1999) (emphasis added).

Finally, the context further shows Kleinman's statements are expressions of opinion. An allegedly defamatory statement appearing on X "conveys a strong signal to a reasonable reader that this was [d]efendant's opinion." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020); *see Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15 CV 4779-LTS-SN, 2016 U.S. Dist. LEXIS 56601, *8 (S.D.N.Y. Apr. 28, 2016) (finding that "the media vehicles used to disseminate the

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

Publications — a WordPress blog, social media posts, and an unsigned press release complaining about litigation tactics — suggest to readers that they contain opinions, not facts, and they are written in an amateurish fashion"); *Broughty v. Bouzy*, No. 22-6458 (SDW) (JRA), 2023 U.S. Dist. LEXIS 136681, *16 (D.N.J. Aug. 7, 2023) (noting that "Twitter is a public forum where a reasonable reader will expect to find many more opinions than facts" and that "Twitter is a forum where a user, 'in the same setting and with the same audience, has the immediate opportunity to air his competing view' and thus may generally remedy any defamation with 'self-help' rather than rely on litigation"). Kleinman's statements were published exclusively on X, a forum where readers are primed to interpret posts as opinion, not fact. And the wording of his statements shows that he was complaining about Jones and her (in his view) overly permissive attitude toward minors' access to books in libraries. No reasonable person would have viewed his statements as sober news reporting on Jones sexually molesting children.

Aside from the "where" of Kleinman's statements, the "what" also shows he was expressing his opinion. "Even apparent statements of fact may assume the character of statements of opinion . . . when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Steinhilber v. Alphone*, 68 N.Y.2d 283, 294 (1986); *see Jacobus v. Trump*, 51 N.Y.S.3d 330, 336 (N.Y. Sup. Ct. 2017), *aff'd*, 64

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

N.Y.S.3d 889 (1st Dep't 2017) (finding that "[a]s context is key, defamatory statements advanced during the course of a heated public debate, during which an audience would reasonably anticipate the use of epithets, fiery rhetoric or hyperbole, are not actionable"). *Torain v. Liu*, 279 F. App'x 46 (2d Cir. 2008), is particularly instructive. The Second Circuit found, at the motion to dismiss stage, that statements calling the plaintiff a "sick racist pedophile," a "loser pedophile," a "broadcaster pedophile," a "child predator," a "lunatic," and that he "must be put behind bars" were expressions of opinion because these statements were part of a "war of words" between rival disk-jockeys that received "extensive media coverage and commentary." *Id.* at 46-47. And much more recently, the court in *Grama v. UMG Recordings, Inc.*, No. 1:25-cv-00399-JAV (S.D.N.Y. Oct. 9, 2025), Doc. 96, found that Kendrick Lamar was expressing his protected opinion about his rival, Drake, in his "diss track" with song lyrics "explicitly accusing Drake of being a pedophile."

Kleinman posted about Jones in the context of an ongoing, national discussion about minors' access to sexual material in libraries, a discussion where allegations like "grooming" and "sexualizing children" had been bandied about for *years* by others before any of Kleinman's complained-of statements. Kleinman's audience was familiar with such rhetoric by that time, and no reasonable person would interpret Kleinman's statements as factual assertions.

### 4.3.1.2     The Actual Malice Standard Applies

A public figure must show that the defendant published their statements with actual malice. *See New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *Lawrence v. Bauer Pub. Co.*, 89 N.J. 451 (1982).  Jones acknowledges in her Complaint that this standard applies to her defamation claim.  ECF No. 1 at ¶¶ 91-94.

New Jersey is different from other states, however, in that the actual malice standard applies even if the plaintiff is a private figure, so long as the statements at issue involve a matter of public concern. *Senna v. Florimont*, 196 N.J. 469, 496 (2008). Notably, by requiring a demonstration of actual malice on *all* defamation claims involving a matter of public concern, New Jersey has risen above the floor set by the U.S. Supreme Court and provided greater protection for speech alleged to defame a private citizen if the matter was one of public interest. *Id.* at 484-85 (2008).

A public figure is an individual "intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 164 (1967). One can either be a public figure for all purposes (which Kleinman does not argue), or one can be a "limited purpose" public figure who "voluntarily injects himself or is drawn into a particular public controversy." *Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974). In making this determination, "[t]he court must consider (1) whether the

alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy." *McDowell v. Paiewonsky*, 769 F.2d 942, 948 (3d Cir. 1985). A public controversy is "a real dispute, the outcome of which affects the general public or some segment of it." *Id*.

Jones brags on her website about the dozens of articles on libraries, librarians, and literary censorship for which she has been interviewed in publications such as *The New York Times*, *NBC News*, *CNN*, *NPR*, *USA Today*, *The Washington Post*, and *Time*. *See* **Exhibit 1**. There is no question that Jones has extensively and voluntarily injected herself into this controversy. And as explained in Sections 2.3 and 4.1, *supra*, this is a controversy of nationwide importance and general public concern. Jones is thus a limited-purpose public figure in relation to this nationwide debate, which is a matter of public concern.

### 4.3.1.3      Jones Has Not Alleged Actual Malice

"Actual malice" means actual knowledge of falsity or reckless disregard. *See New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). A motive to harm the plaintiff or ill will toward them is irrelevant. *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 360 (3d Cir. 2020). "Reckless disregard" exists where the defendant "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). A public figure plaintiff "must allege *facts* to support an inference of actual malice." *Pace v. Baker-White*, 850 Fed. Appx.

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

RANDAZZA | LEGAL GROUP

827, 831-32 (3d Cir. 2021) (finding conclusory and insufficient allegations that the defendants "had knowledge of, or acted in reckless disregard as to the falsity of the matter [they] communicated"). And while a statement being inherently improbable can indicate actual malice, a plaintiff must allege facts showing how such improbability infers actual malice. *Id*. at 832 (holding that because a journalist *could* interpret the plaintiff's statements in an uncharitable way, even if there was a dispute as to whether the journalist *should* have interpreted them in that manner, the plaintiff did not sufficiently allege actual malice due to alleged inherent improbability of the journalist's statements).

Jones's allegations of actual malice are threadbare. She claims Kleinman "knows his statements are false" or "[a]t the very minimum, he recklessly disregards whether they are false" (ECF No. 1 at ¶¶ 92-93), and that "[t]he notion that an elementary educator such as Jones would 'prey on,' 'sexualize,' and 'groom' children, including by giving them highly age-inappropriate sexual material, is so inherently improbable that Kleinman must be malicious and at a minimum reckless in posting it." *Id*. at ¶ 94. The allegations in paragraphs 92 and 93 are a mere recitation of the actual malice standard that contain no factual allegations, and are thus inadequate, mandating dismissal. *Baker-White*, 850 Fed. Appx. at 831-32. The paragraph about inherent improbability fares no better, as there are no facts alleged as to *why* it is improbable to think that someone like Jones is engaged in the

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

grooming of children. Educator sexual misconduct is rampant. *See, e.g.,* Elizabeth L. Jeglic Ph.D, "Educator Sexual Misconduct Remains Prevalent in Schools," Psychology Today (May 17, 2023), attached as **Exhibit 11**.[17]  Studies have found that 11.7 percent of recent grads reported educator sexual misconduct. *Id*. People with access to children often abuse them physically.  It is hardly "improbable" that someone who has access to children would engage in inappropriate, even if legal, conduct.  This is not to say that Jones has directly done so.  However, to say "any such accusation is highly improbable because I am an educator" is to simply engage in making things up.

Numerous media articles Jones posts on her website show that a significant portion of the public think that grooming is exactly what Jones and people like her are doing to young students when they push the Overton Window for what kinds of materials are appropriate for children. This kind of debate is an American tradition, going back over a century regarding numerous books considered objectionable for various reasons. *See, e.g.,* "BANNED: Adventures of Huckleberry Finn," PBS (2017), attached as **Exhibit 12**[18] (discussing Huckleberry Finn being banned as early

---

[17]  Available at:  https://www.psychologytoday.com/us/blog/protecting-children-from-sexual-abuse/202305/educator-sexual-misconduct-remains-prevalent-in  (last accessed Oct. 8, 2025).
[18]  Available at:  https://www.pbs.org/wgbh/americanexperience/features/banned-adventures-huckleberry-finn/ (last accessed Oct. 8, 2025).

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

as 1885 due to claims it is racist); Shannon Carlin, "The History Behind Judy Blume's Most Controversial Novel, *Forever*," TIME (May 8, 2025), attached as **Exhibit 13**[19] (discussing history of Judy Blume's 1975 novel, *Forever*, being banned for being too sexually explicit for young readers). Jones is free to disagree with this widely held opinion, but that does not mean Kleinman made false statements, and it certainly does not mean Kleinman made any statements with actual malice. In fact, he didn't even express an outlier opinion. Since Jones failed to even *allege* actual malice in this case about a matter of public concern, her case is over. *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (granting motion to dismiss for failure to sufficiently allege facts supporting allegation of actual malice).

### 4.3.2  The False Light Claim Fails

Jones's claim for false light also fails as a matter of law. To succeed on a false light claim, the plaintiff must show (1) that the "false light in which [she] was placed would be highly offensive to a reasonable person;" and (2) that the defendant "had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Durando v. Nutley Sun*, 209 N.J. 235, 249 (2012), *citing* Restatement (Second) of Torts § 652E. The first element, as in a defamation claim, requires a false statement of fact. *Romaine v.*

---

[19]    Available at:  https://time.com/7283728/forever-judy-blume-book-ban-netflix/ (last accessed Oct. 8, 2025).

*Kallinger*, 109 N.J. 282, 294 (1988). The second element "parallels the requirements of the actual malice standard in First Amendment jurisprudence and [New Jersey's] common law." *Id.* The analysis of a false light claim "is parallel to that of defamation." *World Mission Soc'y, Church of God v. Colon*, 2015 N.J. Super. LEXIS 37, at *10 (N.J. Super. Feb. 9, 2015).

As this analysis parallels the defamation analysis, Jones's false light claims because she has not sufficiently alleged a false statement of fact or actual malice. It is also worth noting that Jones does not allege, even in conclusory terms, that she suffered any damages as a result of Kleinman allegedly casting her in a false light. Jones has failed to sufficiently plead a cause of action, and the Court must dismiss her claims with prejudice.

## 5.0    CONCLUSION

For the foregoing reasons, Defendant respectfully request the Court acknowledge Plaintiff's Complaint as a SLAPP and (1) dismiss Plaintiff's claims with prejudice under N.J.S.A. 2A:53A-55(7)(a) and (2) award Defendant his costs and attorneys' fees incurred in defending himself from this suit pursuant to N.J.S.A. 2A:53A-58, to be sought by separate motion.

Dated: October 10, 2025.                    Respectfully Submitted,

                                            /s/ Vincent S. Verdiramo
                                            Vincent S. Verdiramo, 024691986
                                            vincent@verdiramolaw.com
                                            Verdiramo & Verdiramo Esqs. PA
                                            3163 Kennedy Boulevard
                                            Jersey City, New Jersey 07306
                                            Tel: 201-798-7082

                                            Marc J. Randazza (*Admitted pro hac vice*)
                                            mjr@randazza.com, ecf@randazza.com
                                            RANDAZZA LEGAL GROUP, PLLC
                                            30 Western Avenue
                                            Gloucester, MA 01930
                                            Tel: (978) 801-1776

                                            *Attorneys for Defendant*
                                            *Dan Kleinman*

Brief in Support of Defendant's Motion for Judgment on the Pleadings
2:24-cv-10750-BRM-JSA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2025, the foregoing document was served

on all parties or their counsel of record through the CM/ECF system.

/s/ Vincent S. Verdiramo
Vincent S. Verdiramo, 024691986

**RANDAZZA** | LEGAL GROUP