UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

AMANDA JONES, *plaintiff,*                    Case No. 2:24-CV-10750-BRM-JSA

vs.

DAN KLEINMAN, *defendant.*

**BRIEF IN OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS**

Table of Contents

Introduction ..................................................................................................................1

Response to Kleinman's Factual Background............................................................4

   Amanda Jones and *Jones v. Citizens for a New Louisiana* ....................................4

   Lunsford, Thames, and Dan Kleinman ..................................................................5

   *Jones v. Kleinman* ..................................................................................................6

   Kleinman's evidence..............................................................................................11

Response to Kleinman's Argument .........................................................................14

   1.   Choice of law ................................................................................................14

      a.   New Jersey's and Louisiana's defamation laws .......................................15

         1.   Elements ...............................................................................................15

         2.   Falsity ..................................................................................................16

            i.   Threshold issues for the court........................................................16

            ii.  Statements of opinions..................................................................17

         3.   Actual malice ......................................................................................18

      b.   New Jersey's and Louisiana's false light laws..........................................19

      c.   New Jersey's and Louisiana's anti-SLAPP statutes..................................19

      d.   Conflict of laws factors..............................................................................21

      e.   Louisiana law applies .................................................................................22

   2.   Jones's defamation claim ..............................................................................23

      a.   Falsity ........................................................................................................24

      b.   Actual malice..............................................................................................28

   3.   Jones's false light claim ...............................................................................31

Conclusion................................................................................................................31

Table of Authorities

Cases

*Bank v. Lee*,
  481 N.J. Super. 412, 431 A.3d 1258 (App. Div. 2025) ......................15, 16, 26, 30

*Davenport v. Edward D. Jones & Co., L.P.*,
  891 F.3d 162 (5th Cir. 2018) ...............................................................................19

*Davis v. Borskey*,
  94-2399 (La. 9/5/95), 660 So. 2d 17 ....................................................................18

*Durando v. Nutley Sun*,
  209 N.J. 235, 37 A.3d 449 (2012)...................................................................19, 29

*Fees v. Trow*,
  105 N.J. 330, 521 A.2d 824 (1987)......................................................................30

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)........................................................................................18, 30

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974).............................................................................................31

*Graham, v. UMG*,
  No. 25-CV-0399 (JAV), 2025 WL 2879607 (S.D.N.Y. Oct. 9, 2025) .................28

*Hughes v. Cap. City Press, L.L.C.*,
  2021-0201 (La. App. 1 Cir. 12/7/21), 332 So. 3d 1198,
  *writ denied*, 2022-00023 (La. 2/22/22), 333 So. 3d 444...........................5, 16, 18

*In re Accutane Litig.*,
  235 N.J. 229, 194 A.3d 503 (N.J. 2018) ...........................................................15

*Jacobs v. The Oath for Louisiana, Inc.*,
  2016-1060 (La. App. 4 Cir. 6/22/17), 221 So. 3d 241, 245–46,
  *writ denied sub nom. Jacobs v. Oath for Louisiana, Inc.*, 2017-1478
  (La. 11/13/17), 229 So. 3d 926 ........................................................................18

*Johnson v. Purpera*,
  2020-01175 (La. 5/13/21), 320 So. 3d 374 ...................................................26, 31

*Jones v. Citizens for a New Louisiana*,
   2023-0654 (La. App. 1 Cir. 10/7/25), --- So. 3d ----,
   2025 WL 2845667.................................................................................................passim

*Jones v. Citizens for a New Louisiana*,
   2024-00945 (La. 12/27/24), 397 So. 3d 842 ......................................................5

*Kennedy v. Sheriff of E. Baton Rouge*,
   2005-1418 (La. 7/10/06), 935 So. 2d 669 .........................................................30

*Kotlikoff v. The Comty. News*,
   89 N.J. 62, 444 A.2d 1086 (1982 ...............................................................17, 25

*Lynch v. N.J. Educ. Assoc.*,
   161 N.J. 152, 735 A.2d 1129 (1999)......................................................... passim

*Mahmoud v. Taylor*,
   606 U.S. ----, 145 S. Ct. 2332 (2025) ...............................................................24

*Mangan v. Corp. Synergies Grp., Inc.*,
   834 F. Supp. 2d 199 (D.N.J. 2011).......................................................16, 17, 25

*Mashburn v. Collin*,
   355 So. 2d 879 (La. 1977) .................................................................................31

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)...............................................................................................17

*New York Times Co. v. Sullivan*,
   376 U.S. 254, 280 (1964)) ................................................................................18

*P.V. ex rel. T.V. v. Camp Jaycee*,
   197 N.J. 132, 962 A.2d 453 (2008)...................................................................22

*Pace v. Baker-White*,
   850 F. App'x 827 (3d Cir. 2021). ......................................................................29

*Paucek v. Shaulis*,
   349 F.R.D. 498 (D.N.J. 2025) .......................................................14, 21, 22, 23

*Rosenblatt v. Baer*,
   383 U.S. 75 (1966)............................................................................................30

*St. Amant v. Thompson*,
　390 U.S. 727 (1968)..................................................................................18, 30

*Swede v. Passaic Daily News*,
　30 N.J. 320, 153 A.2d 36 (1959)) ...........................................................30

*Torain v. Liu*,
　279 F. App'x 46 (2d Cir. 2008) ................................................................28

*Yanong v. Coleman*,
　53,933 (La. App. 2 Cir. 5/17/21), 317 So. 3d 905,
　*reh'g denied* (June 24, 2021), *writ denied*, 2021-01107 (La. 11/10/21),
　326 So. 3d 1249 ......................................................................................17

Statutes

La. Code Civ. Pro. art. 971(A)(1)............................................................19, 20

La. Code Civ. Pro. art. 971(A)(3)...............................................................20

La. Code Civ. Pro. art. 971(B)....................................................................21

N.J.S.A. § 2A:53A-50(b)(3) .......................................................................19

N.J.S.A. § 2A:53A-55(a)(3) ........................................................................20

N.J.S.A. § 2A:53A-57 .................................................................................20

N.J.S.A. § 2A:53A-58 .................................................................................21

Other Authorities

Restatement (Second) of Conflict of Laws § 145 ......................................22

Restatement (Second) of Conflict of Laws § 150 ......................................21

Restatement (Second) of Conflicts § 6.......................................................22

## Introduction

This is a defamation lawsuit. Certain threshold issues are not disputed and need not detain the Court: Jones is a limited public figure; Kleinman made the statements about Jones; and the statements touch on matters of public concern, such that the operative anti-SLAPP statute (whether New Jersey's or Louisiana's) applies.

The question for the Court is whether Jones can prove the elements of a defamation claim. The elements in dispute are falsity and actual malice.

Kleinman's motion leaves the impression that Kleinman's statements cannot be false because they do nothing more than fairly characterize Jones and her work. But the motion relies on a false premise: Contrary to its repeated assertion, Jones does *not* advocate giving books that contain adult material to children. The motion repeatedly points to the book *Gender Queer*, but Jones is an elementary school librarian, and the book *Gender Queer* is not in her library. She has never given it to her students, and she has never advocated giving it to elementary school-age children.

Kleinman refers repeatedly to *Jones v. Citizens for a New Louisiana*. That case is instructive: Kleinman misrepresents Jones to the Court here, just as the defendants in *Jones v. Citizens for a New Louisiana* did in Louisiana. There, instead of *Gender Queer*, the book was *Let's Talk About It*. That book also contained photos depicting gay sex, and those defendants also said Jones advocated giving it to

children *when she did not*.  Louisiana's supreme court and one of its courts of appeal have now both weighed in on the case, most recently earlier this month when the latter unambiguously ruled that Jones's defamation claim has a probability of success.  Louisiana's anti-SLAPP statute did not bar that lawsuit.  The same analysis applies here.

Kleinman tells the Court that Jones has filed "multiple lawsuits" against detractors.  Before now, she has filed only one, *Jones v. Citizens for a New Louisiana*, in 2022.  That lawsuit is why she is widely known today.  She is famous for defending herself.  She is not famous for advocating giving adult books to children *because she does not do that*.  The repeated falsehood is injurious to her professional reputation and, in today's world, dangerous.

Kleinman contends he is merely contributing to a healthy public debate about books.  There might be a healthy public debate about books—but that is not what this lawsuit is about.  The complaint itemizes approximately 50 (there are more) of Kleinman's published statements in 2024 alone—including X posts, SafeLibraries purported exposes, and even an email to Jones's employer—which together and standing along falsely represent that Jones "sexualizes and indoctrinates" her students by giving them highly age-inappropriate sexual material, *see* Doc. 1 ¶¶ 23-72—*something she does not do*.

2

Kleinman contends he is merely speaking hyperbolically, and that no one takes him seriously. But in his posts, he purports to speak in matters of "fact." *E.g.*, Doc. 1 ¶¶ 33, 36. He does not purport to have merely an opinion; he purports to have "evidence." *E.g.*, Doc. 1 ¶¶ 63, 68. Last year he appeared on Louisiana talk radio to talk about Jones; traveled to Louisiana for the purpose of speaking about Jones at a ticketed event, for which he was the featured guest; purported to have attended the annual Louisiana Library Association meeting for the purpose of encountering Jones; threatened Live Oak Middle School, Jones's employer; and implored the Louisiana Department of Education to revoke Jones's teaching certificate and Louisiana parents to challenge it. Doc. 1 ¶¶ 3, 13-18, 29, 62-63, 66-68. His mission, in his own words, is "to expose the harm Amanda Jones and now Live Oak Middle School is doing to your children," Doc. 1 ¶ 68, so that Jones will be fired, or worse.

This lawsuit does not seek to silence a public debate about books. It seeks to stop an escalation of dangerous falsehoods about an elementary school librarian who, although her prominence has grown, still loves her job and wants to continue to do it safely.

3

**Response to Kleinman's Factual Background**

**Amanda Jones and *Jones v. Citizens for a New Louisiana***

Kleinman's motion attaches several news articles for the proposition that Jones is a public figure. Jones does not dispute that she is a limited public figure for this lawsuit's purposes.

For what it is worth, Jones does not "undersell" her recent fame. Jones is, first and foremost, an elementary school librarian. But she became widely known only in 2022 when, as Kleinman's motion observes, she filed a similar lawsuit in Louisiana against Michael Lunsford and Ryan Thames. Lunsford and Thames said Jones advocated giving erotic and pornographic material to children and teaching children to perform sexual acts. They repeatedly pointed to the book *Let's Talk About It: The Teen's Guide to Sex, Relationships, and Being a Human.*

Lunsford and Thames filed a special motion to strike (in Louisiana, the equivalent of an anti-SLAPP motion), arguing their statements were not actionable because they were opinions only. Kleinman's motion represents Lunsford and Thames "won." Doc. 53-1 at 6, 11, 12. A trial court granted Lunsford and Thames's motion—but a Louisiana court of appeal unambiguously reversed:

> Ms. Jones demonstrated a probability of success that public posts made by the defendants directed toward Ms. Jones were defamatory, were knowingly false or made with reckless disregard of the truth, and caused Ms. Jones injury, including harm to her reputation, contempt,

4

ridicule, anxiety and emotional distress. Accordingly, we find that the trial court erred in granting the special motions to strike.

*Jones v. Citizens for a New Louisiana*, 2023-0654 (La. App. 1 Cir. 10/7/25), --- So. 3d ----, 2025 WL 2845667 at \*14-15. *See also Jones v. Citizens for a New Louisiana*, 2024-00945 (La. 12/27/24), 397 So. 3d 842, 846–47 (Louisiana Supreme Court Justice Hughes, concurring) ("If defendants can prove that plaintiff did the things they claim, then the truth is a defense. If they cannot, they have defamed the plaintiff. Defendants have publicly stated that plaintiff, 'promot[ed] pornography and erotic contents [sic] to kids' and 'advocat[ed] teaching anal sex to 11 year olds.' If plaintiff did not do these acts, she cannot prove a negative. The burden will be on defendants to prove that plaintiff did in fact do the acts they have publicly accused her of.").[1]

### Lunsford, Thames, and Dan Kleinman

While the lawsuit *Jones v. Citizens for a New Louisiana* proceeded in Louisiana, in New Jersey Kleinman imitated Lunsford and Thames online. An affinity between Kleinman and Lunsford grew, to the point that Lunsford invited Kleinman to speak about Jones at a ticketed event in Baton Rouge, where Kleinman was the special guest. Doc. 1 ¶15. While he was there, he purported to attend the

---

[1] Exhibit 1, declaration of Amanda Jones, attaching Louisiana Supreme Court's and Louisiana First Circuit Court of Appeal's opinions

5

annual Louisiana Library Association meeting for the purpose of confronting Jones. Doc. 1 ¶16.

As Kleinman's stature grew in Louisiana, his calls for action against Jones grew. He began tagging Louisiana legislators in his posts. Doc. 1 ¶16. He threatened Live Oak Middle School, Jones's employer. He made requests pursuant to the Louisiana Public Records Act for, among other things, records of Jones's job performance. Doc. 1 ¶17. He implored the Louisiana Department of Education to revoke Jones's teaching certificate and Livingston Parish parents to challenge it. Doc. 1 ¶18.

### *Jones v. Kleinman*

This lawsuit concerns Kleinman's specific statements about Jones. Kleinman's motion contends that what Jones is suing over "is somewhat confusing." Doc. 53-1 at 7. He says he "simply called her the pejorative term 'groomer.'" Doc. 53-1 at 19. But that is not true. Jones's complaint itemizes approximately 50 of Kleinman's published statements in 2024 alone. Doc. 1 ¶¶ 23-72. These statements include X posts, SafeLibraries purported exposes, and even an email to Jones's employer. Kleinman admits that he made the statements and that they are about Jones. Doc. 53-1 ¶17 ("Kleinman does not dispute that he published the complained-of statements of and concerning Jones to third parties."). The following statements, a selection of statements reproduced in the complaint, are indicative:

6

27. From a March 1, 2024, X post:

school #librarians like #ThatLibrarian Amanda Jones @abmack33 are **the main source of obscenity for kids**

28. From a March 4, 2024, X post:

I've been called 'dangerous' for writing this.   But Amanda Jones @abmack33 #ThatLibrarian isn't dangerous for **s3xualizing and indoctrinating her middle school students**

29. From a March 9, 2024, X post:

Hmm! I'm in Louisiana talking how #librarians collude to s3xualize and indoctrinate children! Sunday is the annual Louisiana Library Association meeting with #ThatLibrarian Amanda Jones @abmack33 so I'll see her! Us NJ guys really get around!

***

31. From a March 29, 2024, X post:

Librarians **s3xualize and indoctrinate school kids** like #ThatLibrarian Amanda Jones @abmack33 does, then parents complain

32. From an April 8, 2024, X post:

**Actual gr—mer of children**, Louisiana school #librarian Amanda Jones, rarely opens her @abmack33 account, but it's open now + she's slamming #lalege #lagov essentially for protecting citizens from gr—mers like her. And her gr—ming is truth, not defamation

***

36. From an April 11, 2024, X post:

Louisiana's middle school librarian child gr—mer (**fact** via her own admissions, not defamation) Amanda Jones has opened her @abmack33

7

X to attach/astroturf #lalege further for trying to **stop her from further s3xualizing, indoctrinating school kids**

\*\*\*

41. From a May 4, 2024, SafeLibraries blog post:

My own conclusion from Amanda's actions and reactions as I have reported indicates to me that **she needs to be fired as soon as possible**—for the kids sake, the end of this school year might be best. And any action taken by Louisiana legislators in reaction to what I and New Louisiana has already disclosed and continue to disclose is done in an atmosphere where school librarians are **hiding things from parents** AND repeatedly deleting things being reported about their responses to my investigative efforts. When her book 'That Librarian' finally gets published in August, I'll be reading it closely because I'm certain she'll have even more things to hide after I report on that book.  Only this time it will have been published on paper and it will be too late to sneak changes behind the scenes in violation of Louisiana law.

42. From a May 11, 2024, X post, referring to "@abmack33," resharing a photo and joke suggestive of anal sex, and referring to a book that allegedly depicts anal sex:

The favorite subwoofer of school librarians .. who like to **give kids books like 'Let's Talk About It'**!

\*\*\*

62. From an August 27, 2024, X post, referring to "Amanda Jones":

NO ONE SHOULD ATTACK SCHOOL LIBRARIANS. That said, this particular one is a self-admitted gr—mer.  Her certification should be revoked.

63. From an August 31, 2024, SafeLibraries blog post:

8

Now I bring **new evidence** about Amanda and it is not only shocking, but it infects her public school's administration. Administrators at Live Oak Middle School, Denham Springs, LA, are colluding with Amanda to violate state law pertaining to open public records.

64. From a September 1, 2024, X post:
Amanda Jones—That Librarian—School Librarian Who **Packs Heat—To Kill Parents** Who Don't Like Her Gr—ming Their Kid

65. From a September 2, 2024, X post, resharing article about "subsonic ammo":
Now that school librarian Amanda Jones @abmack33 who wrote That Librarian is **carrying a gun** to defend against parents who oppose her s*xualizing and indoctrinating their kids, maybe she would be interested in this

\*\*\*

67. From a September 7, 2024, email to Live Oak Middle School's principal, "Regarding Amanda Jones":
It is apparent to me that you are acting in violation of the law to protect a school librarian who has publicly stated that **she is s*xualizing and indoctrinating school children in her library.** Now that makes you responsible as well for covering up her acts.

\*\*\*

So here's the deal: You respond in accordance with Louisiana law instead of the Amanda Jones Protection Act of Live Oak Middle School Administrators, and you provide each and every document requested, then the public won't think **you have joined Amanda Jones in violating the law** to keep the 'not modern' parents in the dark while their children are s*xualized and indoctrinated by school librarians like Amanda Jones and those she trains.

9

68. From a September 8, 2024, SafeLibraries blog post:

And to Livingston Parish parents, **I'm doing my best to expose the harm Amanda Jones and now Live Oak Middle School is doing to your children**. I even appeared in Baton Rouge to speak for Citizens for a New Louisiana. . . . But I'm not there now. You need to stand up and demand your school serve you and not some Chicago, Illinois, organization empowering Amanda Jones . . . to indoctrinate and s*xualize your children.

\*\*\*

One thing to consider could be challenging the teaching certificate of Amanda Jones. . . . 'Educator credentials can be sanctioned for a conviction of **certain criminal offenses**, for the submission of fraudulent documentation, for professional license censure, for failure to meet the standards for effectiveness, or for participation in cheating' . . . Anyone see anything there or in the remaining sections? I do.

\*\*\*

Why is public employee Amanda Jones still employed in your school? Why are school administrators allowed to help her target your children? **How much more evidence is needed before you act?**

\*\*\*

72. From a November 9, 2024, X post, posting photos of books with visible titles "Spanking for Lovers," "The Ultimate Guide to Kink," "The Ultimate Guide to Threesomes," and "A Transracial Adoption Story":

Do these look like the perfect school books school librarians like Amanda Jones @abmack33 and Martha Hickson @sassy_librarian would love to give school children per @ALALibrary's #UniteAgainstBookBans? Yes, they already cover these topics.

*See* Doc. 1 ¶¶ 23-72.

10

Taken together and standing alone Kleinman's statements represent that Kleinman has evidence that Jones sexualizes and indoctrinates her students ("her middle school kids"; "school children in her library") by giving them highly age-inappropriate material, including *Let's Talk About It*, and is lying about it. *The statements are false.*

**Kleinman's evidence**

If Kleinman had evidence that Jones does what he says she does, he would have attached it to his motion. He does not have it. Jones is an elementary school librarian. Her library is age appropriate. She does not advocate giving children books with age-inappropriate sexual material. The books *Let's Talk About It* and *Gender Queer* are not in her library. Kleinman has no evidence that there are any age-inappropriate books in her library.

Kleinman's motion reproduces parts of the statement that Jones made in July 2022 at a local public library in which she complained that book bans target books on "sexual health" and with "LGBTQ themes." Yes, Jones said that. But that is not the same thing as advocating giving erotic and pornographic material to children (Lunsford and Thames's words) or sexualizing and indoctrinating her students (Kleinman's words). Lunsford, Thames, and Kleinman twist Jones's public statements to paint her as something she is not. When Jones spoke against book bans, she spoke against them in her local public library, which is for all ages. She

11

urged the public to trust dedicated librarians to review books for age appropriateness and to shelve them accordingly.  She even encouraged the public to use the existing book challenge process if they have concerns.  Her entire statement is now in this Court's record, at Doc. 53-4 at pages 15-17.

Kleinman has not previously linked Jones to the book *Gender Queer*, but his motion represents that "Jones publicly advocated for this specific book to be available to minors during an interview with the 'Defense of Democracy' podcast, stating that *Gender Queer* 'saves lives.'"  Doc. 53-1 at 19.  Yes, Jones has defended *Gender Queer* from censors.  But that is not the same thing as advocating giving it to children such as her students.  Kleinman also selectively quotes from the podcast. He omits that, relevant here, Jones expressly stated: "You will not find *Gender Queer* at an elementary school library.  If it is there, it's a mistake and you challenge it. … you follow the policy."  Jones's omitted remarks[2] include, at the 00:24:53 timestamp:

> They always use the same book over and over and it's Gender Queer by Maia Kobabe. It's great book, excellent book um that you will find possibly in a high school library or in teen or adult sections of public libraries. **You will not find Gender Queer at an elementary school library. If it is there, it's a mistake and you challenge it** like you would and you let the librarian go, "Oh, I didn't realize this was here," and you follow the policy. Um there's no need to harass the librarians and freak out.

and, at the 00:59:48 timestamp:

> I know in the legislature there was a lady up at the podium talking and she kept saying ,"Gender Queer is in the kindergarten section. It's in the kindergarten section of my library," and she said where she was from. I

---

[2] Exhibit 1, declaration of Amanda Jones

12

**easily looked up her library and was like, "No, that's in the adult section at your library,"** and so someone went up and countered that point. I always think it's great if you can dispel lies with proof

Relatedly, in a statement[3] she made in April 2023 in her capacity as president of the Louisiana Association of School Librarians, Jones expressly stated "*Gender Queer* is an adult nonfiction book":

> Neither our public nor our school libraries in Louisiana have sexually explicit material in children's sections of the library. … **Gender Queer is an adult nonfiction book that will be found in the adult nonfiction section of the public libraries** in our state.

These public statements contradict the representation that Jones advocates giving books that contain adult material, including *Gender Queer*, to children.

Kleinman's motion seemingly attempts to muddy the waters by using the word "minors" instead of children.  He represents that "Jones publicly advocated for this specific book to be available to *minors* …" *E.g.*, Doc. 53-1 at 19 (emphasis added). The verbiage need not distract the Court.  Presumably "minors" includes high schoolers, but Jones is not a high school librarian.  To be clear, Kleinman says Jones sexualizes and indoctrinates "her middle school kids" and "school children in her library," something for which there is no evidence.

---

[3] Exhibit 1, declaration of Amanda Jones

13

**Response to Kleinman's Argument**

Jones does not address Kleinman's argument that she is a limited public figure, such that she is required to prove actual malice, because she agrees.

She also does not address Kleinman's argument that his statements touch on matters of public concern, such that either New Jersey's or Louisiana's anti-SLAPP statue applies, because she agrees with that, too.

She addresses below the only two issues in dispute, whether she can prove falsity and whether she can prove actual malice.

There remains, however, a question as to which state's law applies. Kleinman's motion assumes that New Jersey's law applies, but Louisiana has a strong interest in this case. Accordingly, before addressing falsity and actual malice, Jones addresses choice of law.

## 1.  Choice of law

"When a federal court sits in diversity, it must apply the choice-of-law rules of the forum state, here, New Jersey." *Paucek v. Shaulis*, 349 F.R.D. 498, 519 (D.N.J. 2025) (citations omitted). "In New Jersey, the first step to resolve a choice-of-law question turns on 'whether the laws of the states with interests in the litigation are in conflict.'" *Paucek*, 349 F.R.D. at 519 (quoting *Freedom Mortg. Corp. v. LoanCare, LLC*, 2023 WL 4366288, at *1 (D.N.J. July 6, 2023)). "A conflict of law arises when the application of one or another state's law may alter the outcome of the case, or

14

when the law of one interested state is offensive or repugnant to the public policy of the other." *Id.* (quoting *In re Accutane Litig.*, 235 N.J. 229, 194 A.3d 503, 517 (N.J. 2018)). "But if the potentially applicable state laws do not actually conflict, 'there is no choice-of-law issue to be resolved, and the forum state applies its own law.'" *Id.* (quoting *In re Accutane Litig.*, 194 A.3d at 517).

### a.   New Jersey's and Louisiana's defamation laws

### 1.   Elements

In New Jersey, a defamation plaintiff must prove "(1) the defendant 'made a false and defamatory statement; (2) 'the statement was communicated to another person (and not privileged);' and (3) the defendant acted with fault by either a negligence or actual malice standard." *Bank v. Lee*, 481 N.J. Super. 412, 431, 334 A.3d 1258, 1269 (App. Div. 2025) (citation omitted).

In Louisiana, a defamation plaintiff must prove "(1) defamatory words, (2) publication, (3) falsity, (4) malice, and (5) resulting injury." *Jones v. Citizens for a New Louisiana*, 2023-0654 (La. App. 1 Cir. 10/7/25), --- So. 3d ----, 2025 WL 2845667 at *6 (citation omitted).

Relevant here, both states require a plaintiff to prove falsity and actual malice.

15

## 2. Falsity

### i. Threshold issues for the court

In New Jersey, "'[t]he threshold issue' of whether a statement has a defamatory meaning is a matter of law 'to be decided by the court.'" *Bank*, 334 A.3d at 1269 (citation omitted). "Courts ordinarily use a context- and content-dependent test regarding the statement's 'fair and natural meaning' as understood 'by reasonable persons of ordinary intelligence.'" *Id.* (citation omitted). "[W]hether a statement is defamatory depends on 'its content, verifiability, and context.'" *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204–05 (D.N.J. 2011) (quoting *Lynch v. N.J. Educ. Assoc.*, 161 N.J. 152, 167, 735 A.2d 1129 (1999)).

In Louisiana, like in New Jersey, "whether a communication is objectively capable of a defamatory meaning is a legal question for the court." *Hughes v. Cap. City Press, L.L.C.*, 2021-0201 (La. App. 1 Cir. 12/7/21), 332 So. 3d 1198, 1209, *writ denied*, 2022-00023 (La. 2/22/22), 333 So. 3d 444 (citation omitted). "[A] court must consider the context of the communication and whether the average listener could have reasonably understood the communication to convey the defamatory meaning." *Hughes*, 332 So. 3d at 1209 (citation omitted). "The test is the effect it is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons by whom it is heard." *Yanong v. Coleman*, 53,933 (La.

16

App. 2 Cir. 5/17/21), 317 So. 3d 905, 912, *reh'g denied* (June 24, 2021), *writ denied*, 2021-01107 (La. 11/10/21), 326 So. 3d 1249 (citation omitted).

### ii.    Statements of opinions

In New Jersey, "to qualify as a defamatory statement, the statement must be able to be proven true or false." *Mangan*, 834 F. Supp. 2d at 204-05 (citation omitted). "Statements of pure opinion do not satisfy this requirement because such statements only 'reflect a state of mind,' and therefore generally 'cannot be proved true or false.'" *Id.* (citation omitted). "However, statements of opinion do not receive 'a wholesale defamation exemption.'" *Id.* (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)). "The New Jersey Supreme Court has found that a 'mixed opinion' is one that is 'apparently based on facts about the plaintiff or his conduct that have neither been stated by the defendant nor assumed to exist by the parties to the communication.'" *Id.* (quoting *Kotlikoff v. The Comty. News*, 89 N.J. 62, 69, 444 A.2d 1086 (1982)). "Therefore, opinion statements can trigger liability if the statements 'imply false underlying objective facts.'" *Id.* (quoting *Lynch*, 161 N.J. at 167).

Similarly, in Louisiana, "a statement of opinion can give rise to a defamation action if the opinion statement implies the existence of facts that are defamatory and false." *Jacobs v. The Oath for Louisiana, Inc.*, 2016-1060 (La. App. 4 Cir. 6/22/17), 221 So. 3d 241, 245–46, *writ denied sub nom. Jacobs v. Oath for Louisiana, Inc.*,

17

2017-1478 (La. 11/13/17), 229 So. 3d 926. "[W]hether a statement is one of fact or opinion depends upon the circumstances in which the statement was made, and the reasonable inferences that may be drawn from a statement of opinion will vary depending upon the circumstances of the case." *Jones*, 2025 WL 2845667 at 7. *See also id.* at *6 ("whether a statement constitutes a constitutionally protected assertion of opinion is a question to be resolved by the court").

### 3. Actual malice

In New Jersey, to prove actual malice, a plaintiff must show "the publisher either knew that the statement was false or published with reckless disregard for the truth." *Lynch*, 161 N.J. at 165. Reckless disregard means with a "'high degree of awareness of [its] probable falsity,' or with 'serious doubts' as to the truth of the publication." *Id.* (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

Similarly, in Louisiana, a plaintiff must show that the defendant made the false statement "with knowledge it was false or with reckless disregard of whether it was false or not." *Hughes*, 332 So. 3d at 1210 (quoting *Davis v. Borskey*, 94-2399 (La. 9/5/95), 660 So. 2d 17, 23 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964))). "[C]onduct which would constitute reckless disregard is typically found where a story is fabricated by the defendant, is the product of his imagination,

18

or is so inherently improbable that only a reckless man would have put it in circulation." *Id.* (citation omitted).

### b. New Jersey's and Louisiana's false light laws

In New Jersey, to prove the tort of false light, a plaintiff must show "(1) that 'the false light in which [he] was placed would be highly offensive to a reasonable person' and (2) that the defendant 'had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed.'" *Durando v. Nutley Sun*, 209 N.J. 235, 249, 37 A.3d 449, 458 (2012) (citations omitted).

Similarly, in Louisiana, a plaintiff must show that she was subjected to objectively unreasonable publicity that placed her in a false light before the public. *E.g., Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 172 (5th Cir. 2018) (citing Louisiana law).

### c. New Jersey's and Louisiana's anti-SLAPP statutes

New Jersey and Louisiana both have an anti-SLAPP statute. Both statutes broadly apply in a lawsuit implicating the exercise of the right of free speech on a matter of public concern. N.J.S.A. § 2A:53A-50(b)(3); La. Code Civ. Pro. art. 971(A)(1). There is no conflict in the statutes' reach. Jones does not dispute that this lawsuit falls within either statute's scope.

19

But the statutes differ in material respects:

New Jersey's statute requires the plaintiff to establish a prima facie case as to each essential element of her claim, or the movant to establish either the plaintiff fails to state a claim upon which relief can be granted or there is no genuine issue of material fact. N.J.S.A. § 2A:53A-55(a)(3) ("either: (a) the responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint; or (b) the moving party establishes that: (i) the responding party failed to state a cause of action upon which relief can be granted; or (ii) there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action").

Louisiana's statute requires the plaintiff to establish a probability of success on her claim. La. Code Civ. Pro. art. 971(A)(1). If the plaintiff establishes a probability of success on her claim "that determination shall be admissible in evidence at any later stage of the proceeding." La. Code Civ. Pro. art. 971(A)(3).

New Jersey's statute entitles the moving party to immediately appeal an order denying, in whole or in part, the motion. N.J.S.A. § 2A:53A-57.

Louisiana's statute does not. To be immediately appealed in Louisiana, the order must be separately designated as final.

New Jersey's statute entitles the moving party to attorney's fees if it prevails, but it entitles the responding party to attorney's fees only if the court determines the motion was frivolous or intended to delay.  N.J.S.A. § 2A:53A-58.

Louisiana's statute simply entitles the prevailing party, whether plaintiff or defendant, to attorney's fees.  La. Code Civ. Pro. art. 971(B).

### d.   Conflict of laws factors

Whether New Jersey's and Louisiana's defamation laws materially conflict, their anti-SLAPP statutes do.  "When competing state laws conflict, New Jersey courts must determine which state has the 'most significant relationship' to the claims asserted." *Paucek*, 349 F.R.D. at 520 (citation omitted).

The "presumptive rule" for "multistate defamations involving aggregate communications made over the internet" is to apply "the local law of the state which ... has the most significant relationship to the occurrence and the parties." *Id.* at 521 (citing Restatement (Second) of Conflict of Laws § 150(1)–(2); *id.* cmt. e.).  For a natural person like Jones, that state "will usually be [her] state of domicile because that state is where [s]he will have 'suffered the greatest injury by reason of [her] loss of reputation.'" *Id.*

A court nevertheless also considers whether "general tort principles" require a different result.  Those general tort principles include "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the

21

domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Id.* (quoting Restatement (Second) of Conflict of Laws § 145(2)(a)-(d)).

Finally, a court also considers "state interest factors," including "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Id.* at 524 (quoting *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 147, 962 A.2d 453, 463 (2008) (citing Restatement (Second) of Conflicts § 6(2))). In *Paucek*, Chief Judge Bumb observed that, in the interests of interstate comity, "substantial differences in state treatment of anti-SLAPP relief may defeat" the presumptive rule. *Id.* at 524.

### e.  Louisiana law applies

Applying the foregoing conflict of laws factors, Louisiana laws ought to apply here. Louisiana has the most significant relationship to the claims asserted.

The presumptive rule holds Louisiana's laws apply: Jones is domiciled there. She is an elementary school librarian there.

General tort principles strongly weigh in favor of applying Louisiana's laws: Kleinman published his statements on the internet, but he specifically directed them to a Louisiana audience, including Louisiana's elected officials, Louisiana's Superintendent of Education, and Live Oak Middle School, Jones's employer in

22

Louisiana.  He cultivated relationships in Louisiana.  He traveled to Louisiana to speak about Jones and to attempt to confront her there.  He implored the Louisiana Department of Education to revoke Jones's teaching certificate and Louisiana parents to challenge it.

State interest factors do not defeat the presumptive rule.  Louisiana's anti-SLAPP statute is different than but not weaker than New Jersey's.  The interests of the parties are not inconsistent; Jones lives in Louisiana and Kleinman directed his statements there.  The interests underlying the field of tort law are neutral.  The interests of judicial administration favor New Jersey, and New Jersey has an interest in regulating its citizens' wrongful conduct, but those factors do not "flip" the analysis in a case that otherwise is not close.  *Contrast with Paucek*, 349 F.R.D. at 520 (reaching different conclusion where "it is a somewhat close question").

That said, Jones's claims survive Kleinman's motion regardless of which state's laws apply.

### 2.  Jones's defamation claim

Kleinman argues Jones's defamation claim fails because she cannot prove falsity or actual malice.  She can.

23

### a. Falsity

As to falsity, the thrust of Kleinman's argument is his statements cannot be false because they are matters of opinion. But Kleinman fails to fully account for what he has said.

Kleinman contends he only called Jones a "groomer." Doc. 53-1 at 19 (he "simply called her the pejorative word 'groomer'"). Setting aside whether calling an elementary school librarian who does not give her students books with adult material a groomer is okay—Kleinman did not only call Jones a groomer. He said, over and over, that Jones sexualizes and indoctrinates her students ("her middle school kids"; "school children in her library") by giving them highly age-inappropriate material, including *Let's Talk About It*, and that she is lying about it.

Kleinman contends he spoke hyperbolically only. Doc. 53-1 at 24 ("[n]o reasonable person would have viewed his statements as sober news reporting"). But he did not speak hyperbolically only: As shown, he called his statements "fact" for which he has "evidence." He called for her to be fired.

Kleinman contends he is only contributing to a healthy public debate about books. Doc. 53-1 at 20 ("[r]easonable people may have differing opinions") (pointing generally to *Mahmoud v. Taylor*, 606 U.S. ----, 145 S. Ct. 2332 (2025), a case about parents' rights to opt-out of supplemental curriculum). But he does not have to defame Jones to contribute to any debate: As shown, Jones does *not* advocate

24

giving books that contain adult material to children. Kleinman misrepresents Jones's statements about the book *Gender Queer*. Jones called it a great book, but, relevant here, she expressly said: "You will not find *Gender Queer* at an elementary school library. If it is there, it's a mistake and you challenge it." Jones has never given *Gender Queer* to her students, and she has never advocated giving it to elementary school-age children. Far from it, she has insisted that *Gender Queer* is an "adult nonfiction book" found only in the "adult nonfiction section" of a public library.

However Kleinman characterizes his statements, the question for this Court, under either New Jersey or Louisiana law, is whether the statements can be verified, *i.e.*, whether they contain or imply a provably false fact. *Mangan*, 834 F. Supp. 2d at 204-05 (quoting *Lynch*, 161 N.J. at 167); *Jones*, 2025 WL 2845667 at 7. The answer is, they can. Kleinman specifically asserts, as objective "fact," that Jones, an elementary school librarian, sexualizes and indoctrinates her students ("her middle school kids"; "school children in her library") by giving them highly age-inappropriate material. He says he has "evidence." His assertions are either true or false. Jones either gives elementary school children books that contain adult material, or she does not. Even if Kleinman had instead said, "It is only my opinion that Jones gives elementary school children books that contain adult material," the inference is that he is aware of facts which support that opinion. *Mangan*, 834 F. Supp. 2d at 204-05 (quoting *Kotlikoff*, 89 N.J. at 69); *Bussie*, 535 So. 2d at 381

25

("Even if no facts are expressly stated, the opinion may give rise to an unspoken inference that certain facts are true. For example, if a person states that 'In my opinion, Mr. Smith is a thief,' the inference is that the speaker is aware of facts which support his opinion. Such a statement, though couched in terms of an opinion, could certainly give rise to a defamation action."). That inference is also true or false. It is not a matter of pure opinion.

"The crucial difference between a statement of fact and an opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." *Johnson v. Purpera*, 2020-01175 (La. 5/13/21), 320 So. 3d 374, 394 (citation omitted). *See also Bank*, 334 A.3d at 1269 (citation omitted) (courts look at "the statement's 'fair and natural meaning' as understood 'by reasonable persons of ordinary intelligence'"). The Court need not make an educated guess here, because the evidence is that ordinary persons reading Kleinman's statements did not understand them as statements of opinion. For example, in response to Kleinman's statements, persons responded:

> "Right. There's one reason, and one reason only why adults would fight to s€xualize children. And all under the cloak of the 1st amendment. Devious demons."

> "Because she is a big fat groomer liar, that's why. The lengths they are willing to go to distribute obscenity to minor children is profoundly disturbing."

> "Who is this sick pervert- AMANDA JONES??? hiding SEXUAL content from Parents.."

26

"Ah, Amanda Jones.  She needs to be in prison for what she's doing to kids."

Doc. 1 at ¶ 21.  These people accepted as fact that Jones does what Kleinman says she does.  She does not.

The takeaway is, whether applying New Jersey or Louisiana law, Jones can prove falsity.  She has made a prima facie case (New Jersey law) and has a probability of success (Louisiana law).

Before leaving the subject, however, Jones addresses other of Kleinman's arguments relating to falsity.

To the extent that Kleinman suggests the word "groomer" is not actionable, *see* Doc. 53-1 at 21-22 (distinguishing cases), there is a difference between jokingly calling someone a groomer and pointedly accusing an elementary school librarian of grooming behavior.  Even in his motion, Kleinman falsely represents that Jones "exhibits one of the red flags for child grooming" by "[e]xposing the child or young adult to sexual and/or age-inappropriate conversations, media, and behaviors."  Doc. 53-1 at 21 (quoting CT Children's Alliance Fact Sheet).  Statements such as these, which are not true, cast Jones as deviant and a danger to children and exposes her to misplaced contempt and ridicule in the community.  They are defamatory.

Kleinman's motion represents: "Kleinman's statements were published exclusively on X."  Doc. 53-1 at 31.  That is not true.  He made his statements in articles posted on SafeLibraries.com and in communications to Jones's employer.  In

27

any event, to the extent that Kleinman suggests X posts are not actionable because a reader should presume that they are opinions, he is wrong. Lunsford and Thames also made statements about Jones on social media, and those statements were actionable. *See generally Jones*, 2025 WL 2845667.

Finally, the "war of words" cases to which Kleinman points are not applicable here. A court recently dismissed rapper Drake's defamation case arising from a diss track in which Kendrick Lamar called Drake a "pedophile." The court did not hold the word "pedophile" is not actionable; to the contrary, it observed that it "has a readily understandable meaning, and it is capable of being proven true or false." *Graham, v. UMG*, No. 25-CV-0399 (JAV), 2025 WL 2879607, at *5 (S.D.N.Y. Oct. 9, 2025). But the statement had to be "placed in its appropriate factual context," which in that case included a series of diss tracks released by Drake and Lamar "in dialogue with one another." *Graham*, 2025 WL 2879607 at *8. *See also id.* at *9 ("the Court must consider the entire rap battle to assess whether the average listener would take Lamar's statements as objective fact or opinion"). Suffice it to say, Jones and Kleinman are not in dialogue with one another. They are not rival rappers or rival disc jockeys such as in *Torain v. Liu*, 279 F. App'x 46 (2d Cir. 2008). This is not a jocular war of words. The accusations are one-way, serious, and false.

### b. Actual malice

Kleinman argues Jones's allegations of actual malice are inadequate.

28

The complaint alleges Kleinman knows his statements are false and, at a very minimum, he recklessly disregards whether they are false.  Doc. 1 at ¶¶ 92-93. Kleinman calls those allegations "threadbare"—but this is not a situation that calls for explanation, *e.g.*, one in which a reasonable journalist might have interpreted facts differently.  *E.g., Pace v. Baker-White*, 850 F. App'x 827, 832 (3d Cir. 2021).

Jones is entitled to rely on objective circumstances to establish actual malice. The objective circumstances include the fact that Kleinman represented his statements as "fact" supported by "evidence," *e.g.*, Doc. 1 ¶¶ 33, 36, 63, 68, when he has none.  More than that, as shown, Jones's public statements—including, in particular, her statements about *Gender Queer*, but also her filings in *Jones v. Citizens for a New Louisiana*—contradict Kleinman.  Kleinman, who closely monitors Jones and the things that she says, would have known that she does not do what he says she does.  Nevertheless, he persisted in his statements, over and over again.

"Conduct which would constitute reckless disregard is typically found where a story is fabricated by the defendant, is the product of his imagination, or is so inherently improbable that only a reckless man would have put it in circulation." *Jones*, 2025 WL 2845667, at *8.  *See also Durando v. Nutley Sun*, 209 N.J. 235, 252, 37 A.3d 449, 460 (2012) ("a publisher will not 'prevail' when his 'allegations are so inherently improbable that only a reckless man would have put them in circulation'")

29

(citations omitted).   The objective circumstances and inherent improbability are sufficient to establish that Kleinman, at minimum, entertained "'serious doubts' as to the truth of the publication."   *Lynch*, 161 N.J. at 165 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

Kleinman argues it is not improbable "to think that someone like Jones is engaged in the grooming of children" because "[e]ducator sexual misconduct is rampant."   Doc. 53-1 at 28-29.   By that logic, anyone may indiscriminately defame any educator with impunity.   That is not the law.

"Tempering open comment on public issues, officials, and figures is society's 'pervasive and strong interest in preventing and redressing attacks upon reputation.'"   *Lynch*, 161 N.J. at 166 (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966)).   "Underlying that interest is 'the essential dignity and worth of every human being— a concept at the root of any decent system of ordered liberty.'" *Id.* (quoting *Rosenblatt*, 383 U.S. at 92 (Stewart, J., concurring)).   "Our law of defamation is grounded on the principle that people should be free 'to enjoy their reputations unimpaired by false and defamatory attacks.'" *Bank*, 481 N.J. Super. at 430 (quoting *Fees v. Trow*, 105 N.J. 330, 336, 521 A.2d 824 (1987) (quoting *Swede v. Passaic Daily News*, 30 N.J. 320, 321, 153 A.2d 36 (1959)).   *See also Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 680 ("Our constitution

30

has expressly balanced the right of free speech with the responsibility for abuse of that right."); *Mashburn v. Collin*, 355 So. 2d 879, 884 (La. 1977) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues."); *Johnson v. Purpera*, 2020-01175 (La. 5/13/21), 320 So. 3d 374, 394 (same). To debate is an American tradition; to defame is not.

### 3. Jones's false light claim

Kleinman argues Jones's false light claim also fails because she cannot prove falsity or actual malice. Jones agrees that for those elements the analysis is the same. For reasons already stated, she can prove falsity (the statements are provably false) and she can prove actual malice (Kleinman, having no evidence for his statements, knew or recklessly disregarded the truth).

## Conclusion

For her claims, Jones has made a prima facie case (New Jersey law) and has a probability of success (Louisiana law). Kleinman's motion must be denied.

31

Respectfully submitted,

*/s/ Kaja S. Elmer*

Alysson Mills, *admitted pro hac vice*
650 Poydras Street, Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
alysson@alyssonmills.com


Kaja S. Elmer
Fishman Haygood LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
t: 504-586-5252
kelmer@fishmanhaygood.com


Marc D. Haefner
Walsh Pizzi O'Reilly Falanga
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
t: 973-757-1100
mhaefner@walsh.law


Certificate of Service

I certify that I electronically filed the foregoing with the Clerk of Court using

the ECF system which sent notification of filing to all counsel of record.

*/s/ Kaja S. Elmer*

32