UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

AMANDA JONES, *plaintiff,*                    Case No. 2:24-CV-10750-BRM-JSA

vs.

DAN KLEINMAN, *defendant.*

## DECLARATION OF AMANDA JONES

I, Amanda Jones, under penalty of perjury, declare as follows:

1.    I am the plaintiff in this lawsuit.  I have reviewed the brief in support of the motion for judgment on the pleadings filed by Dan Kleinman and the brief in opposition to it that is being filed on my behalf.

2.    Both briefs refer to the lawsuit *Jones v. Citizens for a New Louisiana,* which was filed in a state court in Louisiana.  I am the plaintiff in that lawsuit. Attached here are true and correct copies of the Louisiana Supreme Court's and the Louisiana First Circuit Court of Appeal's opinions in that lawsuit.

3.    I am an elementary school librarian.  I do not advocate giving children books with age-inappropriate sexual material.  The books *Let's Talk About it* and *Gender Queer* are not in my library.

**EXHIBIT**

**1**

4.     The brief in support of the motion for judgment on the pleadings filed by Dan Kleinman selectively quotes from remarks I made during a podcast.  It omits that I said, at the 00:24:53 timestamp:

> They always use the same book over and over and it's Gender Queer by Maia Kobabe. It's great book, excellent book um that you will find possibly in a high school library or in teen or adult sections of public libraries. **You will not find Gender Queer at an elementary school library. If it is there, it's a mistake and you challenge it like you** would and you let the librarian go, "Oh, I didn't realize this was here," and you follow the policy. Um there's no need to harass the librarians and freak out.

and, at the 00:59:48 timestamp:

> I know in the legislature there was a lady up at the podium talking and she kept saying ,"Gender Queer is in the kindergarten section. It's in the kindergarten section of my library," and she said where she was from. I easily looked up her library and was like, **"No, that's in the adult section at your library,"** and so someone went up and countered that point. I always think it's great if you can dispel lies with proof

5.     Relatedly, and consistent with the forgoing remarks, in a statement made on April 27, 2023 in my capacity as president of the Louisiana Association of School librarians, publicly available at

https://www.facebook.com/share/v/17AbTNgQEg/?mibextid=wwXIfr I also said:

> Neither our public nor our school libraries in Louisiana have sexually explicit material in children's sections of the library. ... **Gender Queer is an adult nonfiction book that will be found in the adult nonfiction section of the public libraries** in our state.

DATED: October 20, 2025

Amanda Jones

Louisiana Supreme Court's opinion

12/27/2024 "See News Release 059 for any Concurrences and/or Dissents."

# The Supreme Court of the State of Louisiana

**AMANDA JONES**

No. 2024-C-00945

**VS.**

**CITIZENS FOR A NEW LOUISIANA, MICHAEL LUNSFORD, AND RYAN THAMES**

− − − − − −

IN RE: Amanda Jones - Applicant Plaintiff; Applying For Writ Of Certiorari, Parish of Livingston, 21st Judicial District Court Number(s) 175021, Court of Appeal, First Circuit, Number(s) 2023 CA 0654;

− − − − − −

**December 27, 2024**

Writ application granted. See per curiam.

PDG

JLW

JTK

Hughes, J., concurs and assigns reasons.
Crain, J., dissents.
McCallum, J., dissents.

Supreme Court of Louisiana
December 27, 2024

_____
Chief Deputy Clerk of Court
For the Court

**SUPREME COURT OF LOUISIANA**

**No. 2024-C-00945**

**AMANDA JONES**

**VS.**

**CITIZENS FOR A NEW LOUISIANA, MICHAEL LUNSFORD, AND RYAN THAMES**

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of Livingston

PER CURIAM

We are called upon to determine whether the court of appeal erred in finding plaintiff's appeal of an October 11, 2022 judgment granting defendants' special motion to strike was untimely. For the reasons that follow, we vacate the judgment of the court of appeal and remand the case for consideration of the entire appeal on the merits.

**FACTS AND PROCEDURAL HISTORY:**

Plaintiff, Amanda Jones, filed a petition for damages for defamation and requested injunctive relief against defendants, Citizens for a New Louisiana, Michael Lunsford, and Ryan Thames. In response, defendants filed special motions to strike plaintiff's petition, pursuant to La. Code Civ. P. art. 971.[1]

---

[1] La. Code Civ. P. art. 971 states, in relevant part:

> A.(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
>
> ***
>
> B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.

By judgment dated October 11, 2022, the trial court granted defendants' special motions to strike plaintiff's petition and dismissed plaintiff's claims with prejudice. The judgment further provided that a hearing would be set for November 21, 2022 to determine statutory attorney fees in accordance with La. Code Civ. P. art. 971(B).

Plaintiff filed a motion for new trial. As a result, the parties agreed to defer the motion for attorney fees and costs. By judgment dated December 14, 2022, the trial court denied the motion for new trial and ordered the motion to award attorney fees and costs to be reset.

Thereafter, the parties entered into a stipulation regarding attorney fees and costs. On March 2, 2023, the trial court signed a "Final Judgment," wherein the court accepted the parties' stipulation as to attorney fees and costs. The judgment provided, in pertinent part:

> This judgment shall be deemed final, the Court having already resolved the merits of this case by judgments signed October 11, 2022 and December 14, 2022, and there being no remaining issues to resolve.

Plaintiff filed a motion for a devolutive appeal on March 13, 2023. According to plaintiff, during the course of oral argument, the judges of the court of appeal, *sua sponte*, raised questions concerning whether the 2021 amendment to La. Code Civ. P. art. 2088(A)(10)[2] made the October 11, 2022 judgment final and immediately appealable. The court permitted the parties to file supplemental briefs on this issue.

---

[2] La. Code Civ. P. art. 2088 states:

> A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to do any of the following:
>
> ***
>
> (10) Set and tax costs, expert witness fees, and attorney fees.

On January 26, 2024, the court of appeal, in a divided opinion, affirmed the March 2, 2023 judgment on attorney fees, but declined to reach the merits of the October 11, 2022 judgment on the ground the appeal of this judgment was untimely. *Jones v. Citizens for a New Louisiana*, 2023-0654 (La. App. 1 Cir. 1/26/24), 387 So. 3d 1.  The majority of the court found the October 11, 2022 judgment was a final and immediately appealable judgment because it resolved all issues, except attorney fees and costs, which the trial court retained jurisdiction to set under the recent amendment to La. Code Civ. P. art. 2088(A)(10). Accordingly, the majority found plaintiff's appeal of the October 11, 2022 judgment was untimely and declined to consider this portion of the appeal.  The court further held the appeal of the March 2, 2023 judgment on attorney fees and costs was timely, but found plaintiff raised no arguments with respect to this judgment; therefore, the court of appeal affirmed it.

One judge dissented  from the court's refusal to consider the October 11, 2022 judgment.  The dissenting judge reasoned that the granting of a special motion to strike pursuant to La. Code Civ. P. art. 971 without resolution of attorney fees has been consistently characterized as an interlocutory judgment, and the 2021 amendment to La. Code Civ. P. art. 2088 did not change the character of the judgment.

Upon plaintiff's application, we now exercise our supervisory jurisdiction to consider whether the appeal of the October 11, 2022 judgment was timely.

**DISCUSSION**

Under La. Code Civ. P. art. 1841, a final judgment is a judgment that "determines the merits in whole or in part," and an interlocutory judgment is one that "does not determine the merits but only preliminary matters in the course of the action."  The October 11, 2022 judgment clearly grants defendants' special motions

3

to strike and dismisses "with full prejudice the claims of Plaintiff against Defendants Ryan Thames, Citizens for a New Louisiana, and Michael Lunsford."  However, the judgment does not make a mandatory award of attorney fees as required by La. Code Civ. P. art. 971(B) but instead reserves that determination for a later hearing.

In considering similar judgments rendered under La. Code Civ. P. art. 971, the appellate jurisprudence has uniformly characterized judgments granting a special motion to strike but not awarding attorney fees as interlocutory in nature.  *See Alost v. Lawler*, 2020-0832, pp. 5-6 (La. App. 1 Cir. 6/2/21), 326 So. 3d 1255, 1260-61, *writ denied*, 2021-00941 (La. 10/19/21), 326 So. 3d 256; *Samuel v. Remy*, 2015-0464, 2016 WL 4591885 at *5 (La. App. 1 Cir. 8/31/16) (unpub.), *writ denied*, 2016-1785 (La. 11/29/16), 211 So.3d 387; *Davis v. Benton*, 2003-0851, p. 6 (La. App. 1 Cir. 2/23/04), 874 So. 2d 185, 188 n.1.

However, these opinions involved facts which arose prior to the 2021 amendment to La. Code Civ. P. art. 2088.  Effective August 1, 2021, La. Code Civ. P. art. 2088(A)(10) now provides:

> A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to do any of the following:
>
> ***
>
> (10) **Set and tax costs, expert witness fees, and attorney fees.**  [emphasis added].

The official revision comments explain this article allows attorney fees to be set while an appeal is pending:

> The amendment to Subparagraph (A)(10) of this Article clarifies that the trial court retains jurisdiction for purposes of setting attorney fees after an appeal has been taken from the initial judgment.  Trial courts award reasonable

4

attorney fees in many judgments, but often these judgments are appealed before the attorney fees are set. **With this amendment, it is no longer necessary for an appellate court to dismiss an appeal in order to allow the trial court to set the amount of the attorney fees, because the trial court has jurisdiction to set attorney fees while the appeal is pending.** [emphasis added].

While La. Code Civ. P. art. 2088(A)(10) clearly provides that the trial court retains jurisdiction to set attorney fees while an appeal is pending, the legislature made no corresponding changes to La. Code Civ. P. art. 1915(A) which would make such partial judgments immediately appealable. Therefore, we must conclude that a partial judgment granting a special motion to strike but not awarding attorney fees remains governed by La. Code Civ. P. art. 1915(B), which provides:

(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

(2) **In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal** and may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties. [emphasis added]

Laws on the same subject matter must be interpreted in reference to each other. La. Civ. Code art. 13; *Oubre v. Louisiana Citizens Fair Plan*, 2011-0097, p.12 (La. 12/16/11), 79 So. 3d 987, 997. Where two statutes deal with the same subject matter, they should be harmonized if possible, as it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws. *South Lafourche Levee Dist. v. Jarreau*, 2016-0788, p. 8 (La. 3/31/17), 217 So. 3d 298, 304; *LeBreton v.*

5

*Rabito*, 97-2221, p. 7 (La.7/8/98), 714 So. 2d 1226, 1229; *Chappuis v. Reggie*, 222 La. 35, 44, 62 So. 2d 92, 95 (1952).

Under the facts of this case, we have little difficulty in harmonizing the provisions of La. Code Civ. P. art. 2088(A)(10) and La. Code Civ. P. art. 1915. By operation of La. Code Civ. P. art. 1915(B)(1), the October 11, 2022 judgment was a partial judgment because it did not resolve all issues in the case. As such, it could not constitute a final judgment for purposes of an immediate appeal "unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay." Had the trial court made such a determination, plaintiff would have been entitled to take an immediate appeal, and the trial court would have retained jurisdiction under La. Code Civ. P. art. 2088(A)(10) to adjudicate the issue of attorney fees during the pendency of the appeal.

However, it is undisputed the trial court did not designate the October 11, 2022 judgment as immediately appealable under La. Code Civ. P. art. 1915(B)(1). Pursuant to La. Code Civ. P. art. 1915(B)(2), the October 11, 2022 judgment therefore remained in an interlocutory posture until March 2, 2023, when the trial court signed a final judgment adjudicating all claims.

Plaintiffs filed a timely appeal of the March 2, 2023 final judgment. This appeal properly placed the October 11, 2022 interlocutory judgment before the court of appeal. Therefore, the court of appeal erred in failing to address the merits of plaintiff's appeal with respect to the October 11, 2022 judgment.

**DECREE**

For the reasons assigned, the writ is granted and made peremptory. The January 26, 2024 judgment of the court of appeal is vacated and set aside. The case is remanded to the court of appeal to consider all assignments of error raised in the March 13, 2023 devolutive appeal filed by Amanda Jones.

6

# SUPREME COURT OF LOUISIANA

## No. 2024-C-00945

## AMANDA JONES

## VS.

## CITIZENS FOR A NEW LOUISIANA, MICHAEL LUNSFORD, AND RYAN THAMES

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of Livingston

**Hughes, J., concurs.**

I agree the appeal of this matter should be considered on the merits.

Footnote #1 of the appellate opinion (387 So.3d at 5) contains some very specific allegations. If defendants can prove that plaintiff did the things they claim, then the truth is a defense. If they cannot, they have defamed the plaintiff. Defendants have publicly stated that plaintiff, "promot[ed] pornography and erotic contents [sic] to kids" and "advocat[ed] teaching anal sex to 11 year olds." If plaintiff did not do these acts, she cannot prove a negative. The burden will be on defendants to prove that plaintiff did in fact do the acts they have publicly accused her of.

Louisiana First Circuit Court of Appeal's opinion

# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### 2023 CA 0654 R

AMANDA JONES

VERSUS

CITIZENS FOR A NEW LOUISIANA,
MICHAEL LUNSFORD, AND RYAN THAMES

Judgment Rendered: **OCT 07 2025**
_____

\* \* \* \* \* \*

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket No. 175021

Honorable Erika Sledge, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Alysson L. Mills<br>Kristen D. Amond<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellant<br>Amanda Jones |
| Charles L. Chassaignac, IV<br>Elanor W. Wall<br>Emily S. Morrison<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>Citizens for a New Louisiana and<br>Michael Lunsford |
| Joseph J. Long<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Ryan Thames |

\* \* \* \* \* \*

**BEFORE: McCLENDON, C.J., HESTER AND MILLER, JJ.**

**McCLENDON, J.**

In this defamation case, the plaintiff appeals from a judgment of the trial court that granted the defendants' special motions to strike and dismissed with prejudice the claims of the plaintiff. For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

Over the summer of 2022, Amanda Jones, a Livingston Parish public-school librarian, attended a meeting of the Livingston Parish Library Board (Library Board). The public notice for the July 19, 2022 meeting referred to "book content" as an agenda item. Ms. Jones spoke at the meeting in opposition to the proposed policy of imposing content-based restrictions on books.[1] Michael Lunsford and Ryan Thames were present at the meeting. Mr. Lunsford is the executive director of Citizens for a New Louisiana (Citizens), a non-profit corporation founded in 2018. The stated mission of Citizens is to "foster prosperity in Louisiana's overall economy by simplifying complex issues, promoting transparency in local government, and providing sound public policy insights based on thorough research and conservative principles." According to his affidavit, Mr. Lunsford, as the director of Citizens, is responsible for creating Citizens' public Facebook posts. Mr. Thames operates a Facebook blog called "Bayou State of Mind," which Mr. Thames avers publishes political cartoons known as memes.

Following the July 19, 2022 meeting, Mr. Lunsford and Citizens (collectively, Mr. Lunsford) and Mr. Thames made several statements regarding Ms. Jones on social media. On August 9, 2022, Ms. Jones filed a Petition for Damages and for Injunctive Relief against Citizens, Mr. Lunsford, and Mr. Thames, alleging that the named defendants were liable to her for their defamatory posts. Ms. Jones asserted that after the Library Board meeting, Mr. Lunsford and Mr. Thames initiated a public campaign to defame her by posting pictures of her and comments about her on their respective social media accounts. Ms. Jones further contended that the defendants targeted her by asserting that she advocated providing erotic and pornographic material to children, and teaching children to perform sexual acts. In some of the posts by Mr. Lunsford, Ms. Jones was

---

[1] Ms. Jones was the first of approximately thirty persons who spoke at the public meeting regarding the proposed policy. She began by noting that she was president of the Louisiana Association of School Librarians in 2022 and was the 2021 School Library Journal National Librarian of the Year.

2

accused of "'advocating' for having erotica in the kids' section" and "instructing children on how to perform sex acts." Additionally, Mr. Thames posted, among other things, that Ms. Jones was "advocating teaching anal sex to 11-year-olds." In their posts, the defendants allegedly repeatedly referred to a book titled *Let's Talk About It: The Teen's Guide to Sex, Relationships, and Being a Human* and what they described as a picture of two men having anal sex.

Ms. Jones maintained that the defendants' statements were false and that she did not "promot[e] pornography and erotic content to kids." She averred that no one at the Library Board meeting ever mentioned "THAT book" and she did not "advocat[e] teaching anal sex to 11-year-olds."[2] Ms. Jones asserted that the posts were intended to damage her personal and professional reputation. She also alleged that the defendants portrayed her as a criminal and a pedophile and that she had received death threats because of the defendants' false statements. Ms. Jones sought injunctive relief, enjoining the defendants from harassing and defaming her; compensatory damages, including damages for emotional distress; punitive damages; attorney fees and costs; and any and all other relief to which she may be entitled.

In response, the defendants moved to strike Ms. Jones' petition pursuant to Louisiana Code of Civil Procedure article 971.[3] Following a hearing on the special motions to strike, the trial court, in oral reasons, granted the motions, finding that the defendants' statements were not defamatory as they were not false statements "because they seem to be based upon their opinions, based upon the circumstances and their observations at the meeting." The trial court also determined that, as a limited public figure, Ms. Jones failed to show that the defendants acted with actual malice. Lastly, the trial court found that Ms. Jones failed to show that the statements of the defendants caused her actual injury.

---

[2] Ms. Jones alleged that Mr. Lunsford and Mr. Thames falsely represented that she had promoted the book in question, defended having it in the kids' section, and advocated for a book that teaches anal sex to 11-year-olds.

[3] Mr. Thames filed his special motion to strike pursuant to LSA-C.C.P. art. 971 on August 29, 2022, and Mr. Lunsford/Citizens filed their special motion to strike pursuant to LSA-C.C.P. art. 971 on September 12, 2022.

The trial court signed a judgment on October 11, 2022, granting the motions to strike and dismissing with prejudice Ms. Jones' claims against the defendants. The judgment also set a hearing date of November 21, 2022, to determine "an award of reasonable attorney's fees and costs pursuant to La. Code Civil Procedure Art. 971(B)."[4]

Thereafter, to avoid the substantial time and expense of a hearing and its attendant litigation, the parties entered into a Final Judgment, which was signed by the trial court on March 2, 2023, and stipulated to an amount of attorney fees and costs incurred. Particularly, the judgment for attorney fees and costs provided that Ms. Jones "will pay $12,500 to Defendants Citizens for a New Louisiana and Michael Lunsford and $13,000 to Defendant Ryan Thames, constituting the reasonable attorney's fees and costs" that they incurred in the prosecution of their respective special motions to strike pursuant to LSA-C.C.P. art. 971 "after [Ms. Jones'] forthcoming appeal, provided that Defendants prevail on appeal."

On March 13, 2023, Ms. Jones filed a motion for appeal. After the record was lodged, this court, *ex proprio motu*, issued a rule to show cause order.[5] Thereafter, in response to this court's order, the parties obtained a Revised Final Judgment, signed by the trial court on August 28, 2023, which the parties averred addressed this court's concerns with the Final Judgment. Specifically, the Revised Final Judgment removed the provision that the attorney fees and costs are payable "provided that Defendants prevail on appeal." Because the Revised Final Judgment removed the contingency provision, the rule to show cause order was recalled.[6]

---

[4] On October 20, 2022, Ms. Jones filed a Motion for New Trial, arguing that the judgment was contrary to the law and the evidence and that good grounds existed for reconsideration of said judgment. By consent motion and order signed by the trial court, the parties agreed to hear the motion for new trial on November 21, 2022, and to set the defendants' motions for attorney fees at a later date. After the hearing, the trial court denied Ms. Jones's motion for new trial. On December 14, 2022, the trial court signed its judgment, denying the motion for new trial and ordering that the hearing on the award of reasonable attorney fees and costs would be reset by the court.

[5] The rule to show cause order provided:

> It appears that the March 2, 2023 "Final Judgment" is not final for the purpose of appeal, as the stipulated relief provided in the judgment is contingent on a future event; namely, the Defendants prevailing on appeal. ... "A judgment that is contingent on the occurrence of a future event is indeterminate and not a valid, final, appealable judgment." Barfield v. Tammany Holding Company, 2016-1420 (La. App. 1st Cir. 6/2/17), 2017 WL 2399020, at *1.

[6] On September 18, 2023, the Clerk of Court's office of this court supplemented the appellate record with the Rule to Show Cause Order and the Revised Final Judgment.

4

Subsequently, this court declined to reach the merits of the judgment that granted the motions to strike. A majority of the panel determined that the October 11, 2022 judgment was a final judgment and that the appeal of said judgment was untimely, as Ms. Jones did not seek an appeal of the judgment granting the defendants' motions to strike until March 13, 2023.[7] See **Jones v. Citizens for a New Louisiana**, 2023-0654 (La.App. 1 Cir. 1/26/24), 387 So.3d 1.

On December 27, 2024, the Louisiana Supreme Court granted Ms. Jones' writ application, vacated and set aside the judgment of the court of appeal, and remanded the case for consideration of the entire appeal on the merits.[8] See **Jones v. Citizens for a New Louisiana**, 2024-00945 (La. 12/27/24), 397 So.3d 842, 846. In her appeal on the merits, Ms. Jones assigns as error the trial court's granting of the special motions to strike, arguing that 1) she demonstrated a probability of success in proving each element of her defamation claim, and 2) the trial court impermissibly resolved disputed issues of material fact in the defendants' favor.

## DISCUSSION

Louisiana Code of Civil Procedure article 971[9] provides, in pertinent part:

> A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

---

[7] After this court's judgment, Ms. Jones filed an application for rehearing, which was subsequently denied on June 26, 2024.

[8] In its *per curiam* decision, the supreme court, while noting the 2021 amendment to LSA-C.C.P. art. 2088(A)(10), pointed out that the legislature made no corresponding changes to LSA-C.C.P. art. 1915(A) to make such partial judgments immediately appealable. Therefore, the supreme court concluded that a partial judgment granting a special motion to strike, but not awarding attorney fees, remains governed by LSA-C.C.P. art. 1915(B). Consequently, the supreme court determined that the October 11, 2022 judgment was a partial judgment because it did not resolve all issues in the case and, as such, could not be a final judgment unless the trial court made an express determination that there was no just reason for delay. Because the trial court did not designate the October 11, 2022 judgment immediately appealable under LSA-C.C.P. art. 1915(B)(1), the judgment remained in an interlocutory posture until March 2, 2023, when the trial court signed a final judgment adjudicating all claims. See **Jones**, 397 So.2d at 846.

[9] Louisiana Code of Civil Procedure article 971 is Louisiana's Anti-SLAPP statute. See **Shelton v. Pavon**, 2017-0482 (La. 10/18/17), 236 So.3d 1233, 1240, citing **Yount v. Handshoe**, 2014-919 (La.App. 5 Cir. 5/28/15), 171 So.3d 381, 387, in which the fifth circuit explained:

> 'SLAPP' is an acronym for Strategic Lawsuit Against Public Participation, a term first coined by Professors George W. Pring and Penelope Canan to describe generally meritless suits brought by large private interests to deter common citizens from exercising their constitutional right to petition or to punish them for doing so. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation,* 7 Pace Envtl. L.Rev. 3 (1989). ... At their heart, SLAPP suits threaten a citizen's right to petition because the mere filing of the suit limits public participation in the political process.

5

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.

B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.

\* \* \*

F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:

(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:

(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Louisiana Code of Civil Procedure article 971 was enacted by 1999 La. Acts, No. 734, § 1, and the legislature expressly stated its intent in enacting the article. Section 2 of the Act provides:

> The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.

Thus, Article 971 was enacted by the legislature as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. **Hughes v. Capital City Press, L.L.C.**, 2021-0201 (La.App. 1 Cir.

6

12/7/21), 332 So.3d 1198, 1209, writ denied, 2022-00023 (La. 2/22/22), 333 So.3d 444, citing **Thinkstream, Inc. v. Rubin**, 2006-1595 (La.App. 1 Cir. 9/26/07), 971 So.2d 1092, 1100, writ denied, 2007-2113 (La. 1/7/08), 973 So.2d 730.

Our courts have interpreted Article 971(A)(1) to require a two-part burden-shifting analysis. **Shelton v. Pavon**, 2017-0482 (La. 10/18/17), 236 So.3d 1233, 1237. In cases where right of petition and free speech activities form the basis of the claims, the mover must first establish that the cause of action against him arises from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. LSA-C.C.P. art. 971(A)(1); **Shelton**, 236 So.3d at 1237. If the mover makes a *prima facie* showing that his comments were constitutionally protected and in connection with a public issue, the burden shifts to the plaintiff to demonstrate a probability of success on the claim. In cases where more than one claim is alleged in the petition, the courts examine the probability of success of each claim individually. **Shelton**, 236 So.3d at 1237. If the plaintiff can demonstrate a probability of success on any of his claims, then the special motion to strike must fail. **Id**.

A ruling on a special motion to strike is reviewed *de novo* on appeal to determine whether the trial court was legally correct. **Breen v. Holmes**, 2016-1591 (La.App. 1 Cir. 12/7/17), 236 So.3d 632, 636, writ denied, 2018-0049 (La. 3/2/18), 269 So.3d 708. The appellate court gives no special weight to the trial court's findings, but exercises its constitutional duty to review questions of law and renders a judgment on the record. **Id**.

The defendants argue that, applying the clear language of LSA-C.C.P. art. 971, with the legislature's specific intent that the article be broadly construed, their online posts were matters of opinion made in furtherance of their constitutional right to free speech in connection with a public issue as they were posted on a public forum in connection with an issue of public interest. See LSA-C.C.P. art. 971(F)(1)(c) and (d). Thus, according to the defendants, their comments and posts are subject to the special motions to strike, and Ms. Jones failed to establish a probability of success on her claim. See LSA-C.C.P. art. 971(A)(1). Accordingly, our initial consideration is whether the defendants, as the parties asserting the special motions to strike, met their burden of

demonstrating that the suit stems from an act related to free speech, and the speech is connected to a public issue.

A public issue is a matter of public interest or public concern. **Breen**, 236 So.3d at 636. Speech in relation to a matter of public concern is speech "relating to any matter of political, social, or other concern to the community." **Shelton**, 236 So.3d at 1241, citing **Connick v. Myers**, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Suits involving private disputes between private parties generally fall outside the ambit of Article 971. **Shelton**, 236 So.3d at 1241. To determine if speech is a matter of public concern, the court must consider the content, form, and context of the statements as revealed by the entire record. **Breen**, 236 So.3d at 636.

Reviewing the entire record, we find that the defendants have made a *prima facie* showing that this matter arises from acts in furtherance of their rights of free speech in connection with a public issue.[10] This dispute arises from a series of postings in a public forum by the defendants in connection with an issue of public interest, an exercise of free speech. Whether truthful or not, the comments relate to a public issue, that is, the content of books in the children's section of the library. See LSA-C.C.P. art. 971(A)(1) and (F)(1)(c) and (d). Therefore, having satisfied their initial burden of proof on their special motions to strike, the burden then shifted to Ms. Jones to establish, through pleadings and supporting affidavits stating the facts upon which liability is based, a probability of success on her defamation claim. See LSA-C.C.P. art. 1971(A)(2) and (3); **Breen**, 236 So.3d at 637-38.

Rooted in Louisiana Civil Code article 2315, defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. **Hughes**, 332 So.3d at 1209, citing **Johnson v. Purpera**, 2020-01175 (La. 5/13/21), 320 So.3d 374, 386. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. The question is answered by determining whether a listener could have reasonably

---

[10] Mr. Lunsford and Citizens supported their special motion to strike by submitting various exhibits, which included Mr. Lunsford's affidavit, wherein he attested that, as the director of Citizens, he posted his opinion on the public issue of book content. Mr. Thames submitted with his special motion to strike a copy of a page from a book allegedly in the children's section of the library depicting two people having anal sex.

understood the communication, taken in context, to have been intended in a defamatory sense. **Costello v. Hardy**, 2003-1146 (La. 1/21/04), 864 So.2d 129, 140.

To prevail on a defamation claim, the plaintiff must prove by a preponderance of the evidence (1) defamatory words, (2) publication, (3) falsity, (4) malice, and (5) resulting injury. **Hughes**, 332 So.3d at 1209; **Breen**, 236 So.3d at 638. If any of the required elements of the tort is lacking, the claim fails. **Hughes**, 332 So.3d at 1210. Therefore, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words that caused plaintiff damages. **Costello**, 864 So.2d at 139-40.

In **Costello**, the Louisiana Supreme Court explained:

> Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule. Words which convey an element of personal disgrace, dishonesty, or disrepute are defamatory. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. To be actionable, the words must be communicated or "published" to someone other than the plaintiff.

**Costello**, 864 So.2d 129, 140 (citations and footnotes omitted). See also **Hughes**, 332 So.3d at 1209.

However, many statements, though objectionable, are protected by constitutional guarantees of free speech. **Breen**, 236 So.3d at 638. Speech on matters of public concern enjoys enhanced constitutional protection. **Id.**, citing **Romero v. Thomson Newspapers (Wisconsin), Inc.**, 94-1105 (La. 1/17/95), 648 So.2d 866, 869, cert. denied, 515 U.S. 1131, 115 S.Ct. 2556, 132 L.Ed.2d 810 (1995). The constitutional protection for statements of opinion applies in all cases, regardless of whether the plaintiff is a public figure. **Breen**, 236 So.3d at 638.

Whether a statement constitutes a constitutionally protected assertion of opinion is a question to be resolved by the court. **Starr v. Boudreaux**, 2007-06520 (La.App. 1 Cir. 12/21/07), 978 So.2d 384, 389. This requires examination of the statements and the

9

circumstances under which they were made.  **Mashburn v. Collin**, 355 So.2d 879, 887

(La. 1977).  In **Mashburn**, the Louisiana Supreme Court explained:

> In determining whether an expression is a statement of fact or opinion under the common law, words must be read in their context.  Words which, taken by themselves, would appear to be a positive allegation of fact, may be shown by the context to be a mere expression of opinion or argumentative influence.  On the other hand, if a statement, ostensibly in the form of an opinion, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication, the expression gives rise to the inference there are undisclosed facts that justify the opinion.  In such a case the expression, although in the form of an opinion, in reality implies a statement of fact, which is not usually protected by the common law privilege.  In order for a statement to be defended as fair comment it must be recognizable by the ordinary reasonable person as opinion and not as a statement of fact.

**Mashburn**, 355 So.2d at 885-86 (footnotes omitted).  Thus, the question of whether a

statement is one of fact or opinion depends upon the circumstances in which the

statement was made, and the reasonable inferences that may be drawn from a statement

of opinion will vary depending upon the circumstances of the case.  **Breen**, 236 So.3d at

638-39.

In her first assignment of error, Ms. Jones maintains that the trial court erred in

finding that she did not meet her burden of showing a probability of success on her

defamation claim because the record shows that she established that the published

comments and posts were defamatory, false, malicious, and caused injury.  The claims

against the defendants are premised on the Facebook posts attributed to them, some of

which are listed below.

The Statements by Mr. Lunsford

The alleged defamatory statements posted on Facebook and attributed to Mr.

Lunsford include, but are not limited to, the following:

- On July 22, 2022, Mr. Lunsford posted a picture of Ms. Jones speaking at the

  July 19, 2022 Library Board meeting showing her head and upper body in a red

  circle with a white border, similar to a target.  The text above the picture

  provided:

  > Here is Amanda Jones at the Livingston Parish Library board meeting on Tuesday January 19, 2022.  **Why is she fighting so hard to keep sexually erotic and pornographic materials in the kid's section?**  The content in question is so very terrible that The

10

Advocate (Baton Rouge, LA) won't even print it!  They show (attached photo) Amanda Jones as the President of the Louisiana Association of SCHOOL Librarians. **What kind of influence would she have over what your six-year-old kindergartner sees in your local SCHOOL's library**.

- On July 23, 2022, Mr. Lunsford posted:  "Not difficult: should an eight-year-old have unfettered access to erotica in the kids section of the Livingston Parish Library?"

- On August 3, 2022, Mr. Lunsford responded to a comment, stating that "instructing children on how to perform sex acts is not a constitutionally protected right."

- On August 7, 2022, Mr. Lunsford posted: "This is what we're up against, y'all. There are librarians in Livingston Parish who believe that sharing erotica and instructing juveniles on sex acts is progressive …"

The Statements by Mr. Thames

The alleged defamatory statements posted on Facebook and attributed to Mr. Thames include:

- On or around July 21, 2022, Mr. Thames posted a "meme" of Ms. Jones, depicting Ms. Jones smiling and seated behind a desk.  Printed above and below Ms. Jones on the picture is the text: "After advocating teaching anal sex to 11-year-olds I had to change my name on Facebook." Mr. Thames posted the picture with the heading: "This woman is a proud Librarian of the year lol Good job Live Oak Schools."

Mr. Lunsford argues that his comments were statements of opinion and the conclusions were drawn from hearing Ms. Jones speak at the meeting.  He maintains that the statements were not false in his mind when posted.  Mr. Lunsford also argues that the posts were taken out of context and refer to book content, and not to Ms. Jones. Similarly, Mr. Thames argues that his posts on Facebook were simply subjective statements made in connection with a public issue.  He contends that by posting on Facebook the political cartoon he was expressing his opinion on a matter of public concern and not asserting an objective fact.  Mr. Thames also asserts that "[Ms.] Jones is a limited public figure who intimately involved herself, by speaking at the meeting, in the resolution

11

of an important public question (*i.e.*, should certain sexually graphic books be available in Livingston Parish libraries)".

In Louisiana, defamatory words have traditionally been classified into two categories: those that are defamatory *per se* and those that are susceptible of a defamatory meaning. **Kennedy v. Sheriff of East Baton Rouge**, 2005-1418 (La. 7/10/06), 935 So.2d 669, 674-75. Words that expressly or implicitly accuse another of criminal conduct, or which, by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory *per se*. **Kennedy**, 935 So.2d at 675. When a plaintiff proves publication of words that are defamatory *per se*, the elements of falsity and malice are presumed, but may be rebutted by the defendant. Injury may also be presumed. **Id**.

When the words at issue are not defamatory *per se*, a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice, and injury. **Costello**, 864 So.2d at 140. In cases involving statements made about a public figure, where constitutional limitations are implicated, a plaintiff must prove actual malice, *i.e.*, that the defendant either knew the statement was false or acted with reckless disregard for the truth. **Costello**, 864 So.2d at 140-41.

To establish a reckless disregard for the truth, the plaintiff must show that the false publication was made with a high degree of awareness of probable falsity, or that the defendant entertained serious doubt as to the truth of his publication. **Hughes**, 332 So.3d at 1210. Further, conduct which would constitute reckless disregard is typically found where a story is fabricated by the defendant, is the product of his imagination, or is so inherently improbable that only a reckless man would have put it in circulation. **Id**.

A person may become a public figure because they have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. **Gertz v. Robert Welch, Inc.**, 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974). An individual who voluntarily injects himself or is drawn into a particular controversy becomes a public figure for this limited range of issues because

12

they have invited attention and comment and assume special prominence in the resolution of public questions. **Id**.

In her verified petition, Ms. Jones set forth the complete statement she made before the Library Board. Mr. Lunsford and Mr. Thames were present at the July 19, 2022 meeting. They were aware of what was stated and what was not stated by Ms. Jones. When considered in context, a reasonable person considering Mr. Lunsford and Mr. Thames' comments in their social media posts could reasonably believe them to be more than the subjective opinions of the defendants and were posted about Ms. Jones in reckless disregard of the truth. While several of their comments were matters of opinion, such as their disagreement with the moving of books containing sexually explicit and erotic materials to the children's section of the library, some of the defendants' comments were more than statements about book content.

In her petition, Ms. Jones asserted that at the July 19, 2022 Library Board meeting she never discussed instructing children on how to perform sex acts. She stated that the statements made by the defendants about her "are false in every aspect." Further, Mr. Lunsford's argument that the statements posted by Citizens were only about book content is inaccurate. Mr. Lunsford specifically posted on August 7, 2022, that "[t]here are librarians in Livingston Parish who believe that sharing erotica and instructing juveniles on sex acts is progressive." Additionally, Mr. Thames talked about more than whether sexually graphic books should be available in the parish library. In posting the meme with a picture of Ms. Jones on July 21, 2022, Mr. Thames included text referring to Ms. Jones "advocating teaching anal sex to 11-year-olds."

In summary, considering the defendants' statements as a whole, the average reader could have reasonably understood these statements to convey the defamatory meaning Ms. Jones alleges that they impart to a reader. Further, whether the posts by the defendants were defamatory *per se* or susceptible of a defamatory meaning, we find that Ms. Jones has established a probability of success as to the elements of her defamation claim. Having so found, we need not determine whether Ms. Jones is a limited public figure.

13

Ms. Jones' verified petition included her complete statement at the Library Board meeting, and the defendants do not dispute the content of Ms. Jones' statement at the meeting. The factual connotation in the defendants' public comments was defamatory and false. Therefore, we find that Ms. Jones met her burden of demonstrating a probability of success as to the falsity of the defendants' defamatory speech.

Additionally, we find that Ms. Jones demonstrated a probability of success as to actual malice on the part of the defendants. At the very least, the comments by the defendants that Ms. Jones was instructing children on how to perform sex acts and advocating teaching anal sex to 11-year-olds indicate a reckless disregard of the truth.

Further, we find that Ms. Jones demonstrated a probability of success as to the injury element of her defamation claim. Although the trial court stated in its oral reasons that Ms. Jones failed to demonstrate that she lost anything monetarily, Ms. Jones' petition was accompanied by her signed and notarized verification, attesting to the facts alleged therein. In her petition, Ms. Jones specifically asserted that she suffered harm to her reputation; that she was exposed to contempt and ridicule; and that she suffered anxiety and emotional distress. Furthermore, in her verification, she stated:

> Defendants have harassed me continuously since July 19, 2022, continuing to do so as of the time of filing of the petition with this court. They have accused me of despicable criminal acts. Their comments have caused many people to express hatred, some even threatening violence against me. Defendants have told these people where I work, at Live Oak Middle School, and have also threatened to show up there. Defendants have repeatedly contacted my employer demanding disclosure of my private, personal information. I am concerned for my safety, and for the safety of my colleagues and students.

As this court in **Hughes** stated, "[t]he injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage such as loss of income is claimed." **Hughes**, 332 So.3d at 1213 (citing **Costello**, 864 So. 2d at 141).

Therefore, we find that Ms. Jones has met her burden of demonstrating a probability of success on her defamation claim as to certain comments and posts on Facebook made by Mr. Lunsford and Mr. Thames sufficient to defeat their motions to strike. The record shows that Ms. Jones demonstrated a probability of success that public

14

posts made by the defendants directed toward Ms. Jones were defamatory, were knowingly false or made with reckless disregard of the truth, and caused Ms. Jones injury, including harm to her reputation, contempt, ridicule, anxiety and emotional distress. Accordingly, we find that the trial court erred in granting the special motions to strike.[11]

## CONCLUSION

For the above reasons, we reverse the trial court's October 11, 2022 judgment, which granted the special motions to strike pursuant to LSA-C.C.P. art. 971 filed by the defendants, Citizens for a New Louisiana and Michael Lunsford, and by the defendant, Ryan Thames, and dismissed with prejudice the claims of the plaintiff, Amanda Jones. We remand the matter to the trial court for further proceedings consistent herewith. All costs of this appeal are assessed one-half to the defendants, Citizens for a New Louisiana and Michael Lunsford, and one-half to the defendant, Ryan Thames.

**REVERSED AND REMANDED.**

---

[11] Because we are reversing the trial court's judgment and remanding the matter for further proceedings, we need not address Ms. Jones' argument that the trial court impermissibly resolved disputed issues of material fact in the defendants' favor.

15