UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

AMANDA JONES, *plaintiff,* Case No. 2:24-CV-10750-BRM-JSA

vs.

DAN KLEINMAN, *defendant.*

**BRIEF IN OPPOSITION TO
MOTION TO CERTIFY QUESTIONS OF LAW**

Table of Contents

Introduction ........................................................................................ 1

Argument........................................................................................ 2

1. Kleinman's statements are not opinions. ........................................................ 2

2. The fair reporting privilege requires an official action or proceeding or public meeting. It does not apply here. .................................. 4

3. The public-interest privilege applies only where attending circumstances require it. It does not apply here. .......................................... 6

4. Certifying anything at this stage would be premature.................................. 10

5. There is no reason to reverse course at this time. ........................................ 11

Conclusion ........................................................................................ 12

Table of Authorities

**Cases**

*Fitzgerald v. Tucker*,
98-2313 (La. 6/29/99), 737 So. 2d 706 ....................................................4

*Hakim v. O'Donnell*,
49,140 (La. App. 2 Cir. 6/25/14), 144 So. 3d 1179,
*writ denied*, 2014-1501 (La. 11/7/14), 152 So. 3d 175 ..........................................5

*Jones v. Citizens for a New Louisiana*,
2023-0654 (La. App. 1 Cir. 10/7/25), 424 So. 3d 208,
*writ denied*, 2025-01341 (La. 2/10/26), 425 So. 3d 1207 ......................................2

*Kennedy v. Sheriff of E. Baton Rouge*,
2005-1418 (La. 7/10/06), 935 So. 2d 669 ................................................... passim

*Romero v. Thomson Newspapers*,
94–1105, (1/17/95); 648 So. 2d 866 ...........................................................3

*Trentecosta v. Beck*,
96-2388 (La. 10/21/97), 703 So. 2d 552 ......................................................4

**Other Authorities**

Restatement (Second) of Torts § 598 ...........................................................7

Restatement (Second) of Torts § 611 ...........................................................5

## Introduction

Defendant Dan Kleinman moves the Court to certify questions of law to the Louisiana Supreme Court or alternatively to adopt New Jersey common law going forward. [80] The Court should deny Kleinman's motion.

The questions Kleinman proposes to ask the Louisiana Supreme Court are: 1) In a defamation case, what degree of fault applies to a statement of opinion that implies false facts? and 2) Do the fair reporting privilege and/or the public-interest privilege apply to statements published to the public but also directed at public officials? These questions are not relevant here and certifying them to the Louisiana Supreme Court would be a waste of both courts' resources.

First, Kleinman's statements are not opinions. In addition, contrary to Kleinman's argument, the Louisiana law governing opinions that imply false facts is not unsettled.

Second, the fair reporting privilege only protects an accurate account of an official action or proceeding or public meeting. It does not apply here.

Third, the public-interest privilege may protect a report of wrongdoing to someone having authority to act, but only where attending circumstances require it. Attending circumstances did not require any of Kleinman's statements here.

Fourth, certifying anything at this stage would be premature.

Fifth, there is no reason to reverse course and apply New Jersey common law at this time.

**Argument**

**1. Kleinman's statements are not opinions.**

In Louisiana, whether a statement is a fact or an opinion is a question of law for a court to decide. *Jones v. Citizens for a New Louisiana*, 2023-0654 (La. App. 1 Cir. 10/7/25), 424 So. 3d 208, 218, *writ denied*, 2025-01341 (La. 2/10/26), 425 So. 3d 1207 ("whether a statement constitutes a constitutionally protected assertion of opinion is a question to be resolved by the court") (citation omitted).

Kleinman's motion proceeds from the false premise that this Court decided that his statements are quasi-opinion, with the effect that they may be entitled to quasi-protection. Kleinman writes: "The Court here determined that Kleinman's statements were 'not pure opinion' and thus it appears that they fall within the same category of opinion based on implied fact." [80-1 at 7] But Kleinman omits the Court's analysis entirely. The Court did not determine that his statements are any category of opinion. The Court instead determined that Kleinman's statements are statements of fact. The fuller analysis, from the Court's opinion:

> Nor are the statements pure statements of opinion. **A substantial number of statements are presented as true or false statements.** (See, e.g., ECF No. 1 ¶ 60 ("She's a gr—mer."). Furthermore, a few claim the accusations of "sexual grooming" are "**actual**," "**fact**," and "**truth**," (id. ¶¶ 32–33, 36), whereas others state Kleinman had

> evidence of Jones's "sexual grooming" (see id. ¶¶ 30, 34, 39, 41, 63, 68). Based on this alleged evidence of "sexual grooming," Kleinman has advocated for Jones's termination as a middle-school librarian through multiple mediums.8 (Id. ¶¶ 14–15, 41, 46, 62, 67–68; see also id. ¶ 53 (insinuating Jones should be surgically castrated as a child sex offender).)
>
> Therefore, viewing the facts in the Complaint in the light most favorable to Jones, the Court finds the statements Jones is a "sexual groomer" or was "sexually grooming" school children to be objectively capable of a defamatory meaning, i.e., Jones as a middle-school librarian was "sexually grooming" school children with the intent of sexually abusing the children. See Lewis, 427 F. Supp. 3d at 724. **These statements are assertions of fact accusing Jones with, at worst, criminal conduct and, at best, sexual misconduct.** As such, these statements are defamatory per se.

In short, Kleinman's statements assert facts. They do not imply them. He is not entitled to any additional protection that may exist for statements of opinion that imply false facts.

In addition, contrary to Kleinman's argument, the Louisiana law governing opinions that imply false facts is not unsettled. A private plaintiff suing over a statement that *asserts* false facts need only prove negligence. *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 679. A private plaintiff suing over an opinion that *implies* false facts must prove actual malice. *Romero v. Thomson Newspapers*, 94–1105, (1/17/95); 648 So. 2d 866. The distinction turns on whether the statement *asserts* or *implies*. It does not turn on whether the statement is a matter of public concern. *See Kennedy,* 935 So. 2d at 679 ("declining the invitation to adopt a *New York Times* [actual malice] standard of liability in cases

involving private individuals and matters of public concern"); *Romero*, 648 So. 2d at 872 (private plaintiff suing over opinion that implied false fact that was matter of public concern had to prove actual malice); *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99), 737 So. 2d 706, 717 (summarizing law governing opinions, including opinions that imply false facts, whether a matter of public concern or not: "In sum, an expression of opinion is actionable only if it implies the existence of underlying facts ascertainable by a reasonable person with some degree of certainty, and the implied factual assertions are false, defamatory, made with actual malice, and concern another."). There is nothing to impose upon the Louisiana Supreme Court to clarify.

**2. The fair reporting privilege requires an official action or proceeding or public meeting. It does not apply here.**

The fair reporting privilege only protects an accurate account of an official action or proceeding or public meeting. It does not apply here.

The Louisiana Supreme Court adopted the conditional privilege in *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So. 2d 552. In that case, police released information to the public regarding an arrest of a bingo hall operator. That release included the apparently unfounded statement that the bingo hall had "bilked thousands of dollars from charities." The question was "whether a law enforcement officer is entitled to a qualified privilege when the officer releases information to the

public regarding an investigation and arrest." *Id.* at 554. The court concluded that while "law enforcement officers, whose duty includes charging persons with crimes, should be allowed to report the fact of a criminal investigation and an arrest without fear of a defamation action if the person is cleared of the charges, an officer cannot add additional injurious statements that the officer had no reason to believe were true." *Id.* at 564.

The conditional privilege that *Trentacosta* adopted mirrors the Restatement (Second) of Torts § 611 which, by its own terms, applies only to a reporting of an official action or proceeding or public meeting:

> The publication of a defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

*Id.* at 563 (quoting Restatement (Second) of Torts § 611).

Kleinman does not begin to explain how *Trentacosta*'s conditional privilege applies here. He cites *Hakim v. O'Donnell*, 49,140 (La. App. 2 Cir. 6/25/14), 144 So. 3d 1179, *writ denied*, 2014-1501 (La. 11/7/14), 152 So. 3d 175, for the proposition that "Louisiana interprets the *Trentacosta* reporting privilege to reach 'any person' who passes on information 'available to the general public.'" [80-1 at 9] But that is not what *Hakim* held. In *Hakim*, a TV reporter covering a highly publicized criminal trial asked a criminal defendant, "Eddie Hakim gave testimony to make his IRS investigation go away. Is it enough to acquit you?," and the criminal

defendant answered, "It's up to a judge. A judge will make that call." *Id.* at 1183. After video of the exchange aired, Eddie Hakim himself sued, alleging the reporter had defamed him. But the court concluded that the reporter's assertion "was a fair abridgment of the occurrence reported and was a comment on *a judicial proceeding* made in the reasonable belief of its truth." *Id.* at 1192 (emphasis added). It explained that "[i]n reporting on matters of public interest *involving legal and judicial proceedings and records* some errors and inaccuracies are bound to occur in the use of technical terms." *Id.* (emphasis added). *Hakim* does not at all stand for the (untenably) broad proposition that the fair reporting privilege protects "'any person' who passes on information 'available to the general public.'" [80-1 at 9] Undersigned counsel is unaware of any authority which would support applying the privilege here. It requires some reporting on an official action or proceeding or public meeting. Kleinman's statements do not purport to do that, and he does not even attempt to argue otherwise.

### 3. The public-interest privilege applies only where attending circumstances require it. It does not apply here.

The public-interest privilege may protect a report of wrongdoing to someone having authority to act, but only where attending circumstances require it.

The Louisiana Supreme Court adopted the conditional privilege in *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669. In that case,

restaurant employees reported a patron for paying with a counterfeit hundred-dollar bill. The report was false, and the patron sued. The question was "whether a private individual is entitled to a conditional or qualified privilege when the individual reports suspected criminal activity to the police." *Id.* at 673.

Relevant here, the Louisiana Supreme Court began its analysis by reaffirming that the standard of liability to be applied in a private-plaintiff defamation case involving a matter of public concern is negligence. It expressly "decline[d] the invitation to adopt a *New York Times* [actual malice] standard of liability in cases involving private individuals and matters of public concern." *Id.* at 679. The court explained that "Louisiana's interest in protecting the reputations of private individuals is clearly expressed and preserved in our constitution." *Id.*

The court nevertheless recognized a conditional privilege "when any recognized interest of the public is in danger, including the interest in the prevention of crime and the apprehension of criminals." *Id.* at 683 (quoting comment (d) to Restatement (Second) of Torts § 598). The court explained: "It would be self-defeating for society to impose civil liability on a citizen for inaccurately reporting criminal conduct with no intent to mislead." *Id.* (citation omitted). Because the privilege applied to protect the restaurant employees' report to police, the actual malice standard applied in that case. *Id.* at 686.

*Kennedy* is factually distinguishable from this case. The restaurant employees in *Kennedy* reported a single instance of what they believed to be criminal conduct to the police, with no intent to mislead. Kleinman, by contrast, repeatedly broadcast his false statements to the whole world. The complaint itemizes approximately 50 of Kleinman's statements about Jones, all published on the internet. To the extent he contends he was simply reporting what he believed to be criminal conduct to the proper authorities, he himself has not identified which of these statements are directed to persons having any duty to investigate. On the face of the complaint, of Kleinman's approximately 50 statements, only one is addressed to Jones's employer [1 at ¶67 ("a September 7, 2024, email to Live Oak Middle School's principal, 'Regarding Amanda Jones'")] and one to Louisiana's Superintendent of Education, [1 at ¶46 ("@cadebrumley. When is someone going to fire her from @LOMEagers?")]. Other X posts mention Jones's employer but only to attack it for allegedly colluding with Jones. [1 at ¶43, ¶63, ¶66] A blog post addressed to "Livingston Parish parents" mentions Jones's employer but only to complain about its alleged collusion with Jones. [1 at ¶68]

Kleinman's motion assumes that *Kennedy*'s conditional privilege applies to his statements if his publication to the public does not preclude it, but there is no basis for assuming the privilege applies in the first instance.

Whether *Kennedy*'s conditional privilege applies in the first instance is a question for this Court, and this Court has not had the occasion to answer it. *Kennedy* instructs courts to follow a two-step test: The first step asks "whether the attending circumstances of a communication occasion a qualified privilege." *Id.* at 682 ("the first step is generally determined by the court as a matter of law" (citation omitted)). Only if a court answers that question "yes" may a factfinder separately decide "whether the privilege was abused." *Id.*

The pleaded facts compel the conclusion, at this time, that *Kennedy*'s conditional privilege does not apply. With only two exceptions, none of Kleinman's statements are addressed to persons having any authority over Jones, and even those statements do not communicate a factual basis for investigating her so much as threaten the authorities themselves. [1 at ¶46, ¶67] Kleinman's email to Jones's employer appears to seek responses to a public records request. [1 at ¶67] Kleinman's statements bear no semblance to the good faith report to police in *Kennedy*. On the face of the complaint, this case does not present the "attending circumstances" that *Kennedy* contemplates. *Kennedy*, 935 So. 2d at 682. There is no reason to ask the Louisiana Supreme Court whether publication to persons other than proper authorities precludes *Kennedy*'s conditional privilege if the privilege does not even apply here.

**4. Certifying anything at this stage would be premature.**

Kleinman's arguments flow from this Court's preliminary finding that Kleinman did not establish that Jones is a limited-purpose public figure for purposes of this case "at this time." That finding, Kleinman says, "announced negligence as the operative standard," and so requires additional consideration of the new arguments he presents here. [80-1 at 8]

But nothing prevents Kleinman from arguing Jones is a limited-purpose public figure later, with the benefit of discovery. [67 at 25 n.11 ("the Court cannot hold these statements relate to that controversy as a matter of law *at this time*"), 32 ("Kleinman has failed to demonstrate Jones was a limited-purpose public figure … *at this time*"), 32 ("the Court need not determine whether Jones is a private or public figure … *at this time*") (emphases added)]

Indeed discovery, far from foreclosing any of Kleinman's arguments here, will only benefit any courts (this Court, the Louisiana Supreme Court, the U.S. Court of Appeals for the Third Circuit) that may later review them.

For the same reason the Court denied Kleinman's motion to certify for interlocutory appeal, the Court must deny his motion to certify questions to the Louisiana Supreme Court.

**5. There is no reason to reverse course at this time.**

Kleinman's motion to dismiss assumed New Jersey law applied. Jones addressed the issue in her opposition to his motion and argued Louisiana law applies. Jones's analysis did not focus solely on the two state's anti-SLAPP statutes. She also analyzed the two states' defamation laws generally. [54 at 15-19] Kleinman did not do that, even in his reply. [56 at 2 ("With no conflict regarding the substantive law governing Jones's claims, there is no need to undergo a conflict of law analysis for them.")]

Having neglected to address these issues previously, Kleinman contends that "the real conflict" is "clearer" only "now." [80-1 at 14] But even now he does not address the many factors that a court considers in its choice of law analysis, which Jones already did. [54 at 21] Jones does not reproduce that analysis here, because Kleinman does not address it, but it is still correct.

In any event there is no reason for the Court to reconsider its choice of law analysis at this time. The Court presumably was aware that different standards of fault could apply under each state's laws when it denied Kleinman's motion to dismiss. Nothing in the Court's opinion forecloses Kleinman's argument at another time, and discovery will benefit the Court's review then.

## Conclusion

This is not the rare situation that warrants certification to a state supreme court. The Court should deny Kleinman's motion for certification.

Respectfully submitted,

*/s/ Kaja S. Elmer*

Alysson Mills, *admitted pro hac vice*
650 Poydras Street, Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
alysson@alyssonmills.com

Kaja S. Elmer
Fishman Haygood LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
t: 504-586-5252
kelmer@fishmanhaygood.com

Certificate of Service

I certify that I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of filing to all counsel of record.

*/s/ Kaja S. Elmer*